In the Matter of BAKERS MUTUAL INSURANCE COMPANY OF NEW YORK, Appellant. DEPARTMENT OF HEALTH OF THE CITY OF NEW YORK, Respondent.

Argued January 5, 1950; decided April 13, 1950.

22

*Samuel Schub* and *Milton B. Pfeffer* for appellant. I. The State Workmen's Compensation Law, and the public policy expressed therein, are paramount to this municipal regulation. (*Matter of McGrinder* v. *Sullivan*, 290 N. Y. 11; *Matter of Altschuller* v. *Bressler*, 289 N. Y. 463; *Matter of Kress & Co.* v. *Department of Health*, 283 N. Y. 55; *Jewish Consumptives' Relief Soc.* v. *Town of Woodbury*, 230 App. Div. 228, 256 N. Y. 619; *Thomas* v. *Morris*, 286 N. Y. 266; *Munzer* v. *State of New York*, 41 N. Y. S. 2d 98; *Matter of Maryland Cas. Co.* [*City of New York*], 274 App. Div. 211; *Duffy* v. *42nd St. M. & St. N. Ave. Ry Co.*, 266 App. Div. 865; *Hunter* v. *Derby Foods*, 110 F. 2d 970.) II. Substantial justice requires the production of the medical records. (*Steinberg* v. *New York Life Ins. Co.*, 263 N. Y. 45; *Matter of Maryland Cas. Co.* [*City of New York*], 274 App. Div. 211.) III. Because the City of New York is also an employer subject to the Workmen's Compensation

Law, the claimed privilege would result in an unconstitutional, unequal protection of the laws. (N. Y. Const., art. I, § 11; U. S. Const., 14th Amendt., § 1.) IV. To promote healthy and sound working conditions throughout the State, the Workmen's Compensation Law confers upon the board the right to secure accurate information, data and statistics. It is a right which may not be abridged by the city's Sanitary Code. (Workmen's Compensation Law, § 148, subd. 2.)

*John P. McGrath, Corporation Counsel* (*Fred Iscol, Seymour B. Quel* and *Frank A. Piazza* of counsel), for respondent. The application was properly denied since by express provision of the Sanitary Code the medical report is confidential and not subject to subpœna. The provision is valid and is applicable to workmen's compensation proceedings. (*Bandel* v. *City of New York,* 69 Misc. 93, 144 App. Div. 938, 204 N. Y. 683; *Matter of Stracquadanio* v. *Department of Health,* 285 N. Y. 93; *Matter of Maryland Cas. Co.* [*City of New York*], 274 App. Div. 211; *Thomas* v. *Morris,* 286 N. Y. 266; *McGowan* v. *Metropolitan Life Ins. Co.,* 234 App. Div. 366, 259 N. Y. 454; *Cushman* v. *Brundrett,* 50 N. Y. 296; *Mills* v. *Hildreth,* 81 N. Y. 91; *People ex rel. McGuiness* v. *McAneny,* 211 N. Y. 535; *Buffalo Loan Trust & Safe Deposit Co.* v. *Knights Templar & Masonic Mut. Aid Assn.,* 126 N. Y. 450.)

LOUGHRAN, Ch. J. At a hearing held by a referee of the Workmen's Compensation Board upon a claim for death benefits, the widow of a deceased employee named Isaac Trepper introduced medical testimony as to the cause of his death and its connection with his employment. The employer's carrier thereupon served upon the health department of the city of New York a subpœna duces tecum commanding that department and its registrar to produce before the referee the "original confidential certificate of death filed with the Department of Health of one Isaac Trepper who died on March 2, 1947, at 2940 West 29th Street, Brooklyn, New York."

On the return day of that process, a representative of the city health department appeared before the referee and refused to produce the demanded document on the ground that it was a communication that had been made confidential by the Sanitary Code of the city. The employer's carrier then applied under

section 406 of the Civil Practice Act for a warrant to compel production of the document before the Workmen's Compensation Board. Special Term denied that application. The Appellate Division affirmed. We gave the carrier leave to bring the case here.

With exceptions not now material, section 33 of the Sanitary Code of the city requires a " certificate of death " and a separate " confidential medical report " of the cause of death to be filed (1) by any of a number of specified members of the staff of a hospital, or similar institution located within the city when in such an institution a death occurs from natural causes, and (2) by the attending physician when elsewhere in the city there occurs a death of that kind. (Subds. [a], [b].) Such " confidential medical report ", section 33 says, " shall be deemed not a part of such certificate " of death, but on the contrary, " shall be regarded and treated as a confidential and privileged communication, and shall not be subject to subpœna or open to inspection for any reason whatsoever, other than for scientific purposes approved by the [city] Board of Health." (Subd. [c].)

The certificate of the death of Isaac Trepper was filed with the city department of health by a physician in private practice. He set forth therein the following items: (1) the place of death was 2940 West 29th Street, Brooklyn, which was not a hospital or institution; (2) the length of Trepper's residence there was twenty-two years; (3) the time of death was March 2, 1947, at 9:30 A.M.; (4) Trepper was a white man sixty-two years old who had been under medical care since December, 1946. These particulars were followed by an entry in this form: " I further certify that death was not caused, directly or indirectly by accident, homicide, suicide, acute or chronic poisoning, or in any suspicious or unusual manner, and that it was due to NATURAL CAUSES more fully described in the confidential medical report filed with the [city] Department of Health. "

The text which we have quoted from section 33 of the Sanitary Code of the city is incontestably clear. Manifestly that section was meant to be a bar to any juridical evidentiary use of a " confidential medical report " filed in accordance with its requirements. Consequently the city department of health was right in its refusal to produce the confidential medical report of Trep-

per's death — unless indeed so much of section 33 of the Sanitary Code as gave privacy to that report is in itself without validity.

Section 33, as it now reads, was adopted by the board of health of the city department of health on December 12, 1938, pursuant to the municipal charter which (in accordance with a State statute) was adopted by the electorate of the city at the general election of 1937 and took effect January 1, 1938 (see *Matter of Broderick* v. *City of New York*, 295 N. Y. 363). By section 558 of that charter the city board of health is authorized (1) to add to and to alter, amend or repeal any part of the Sanitary Code; (2) to publish therein additional provisions for the security of life and health in the city; and (3) to confer additional powers on the city department of health not inconsistent with the Constitution or laws of this State or with the city charter.

The State Workmen's Compensation Law says: " A subpœna or a subpœna duces tecum may be signed and issued by the chairman, a member of the [workmen's compensation] board, referee or such other officer as may be designated by the chairman. A subpœna or a subpœna duces tecum may also be signed and issued by any attorney and counsellor-at-law appearing before the board on behalf of a claimant or other party. Failure to obey such subpœna shall constitute a contempt as provided by the civil practice act." (Workmen's Compensation Law, § 119.) These provisions of the State Workmen's Compensation Law are read by the carrier( the appellant here) as a contradiction of section 33 of the city Sanitary Code — a construction which necessarily would bring section 33 under the condemnation of the provisions of section 558 of the Charter of the City of New York which, as we have said, forbid a grant to the city health department of any power inconsistent with the Constitution and laws of the State. We cannot adopt that conception of the sense of section 33 in the face of a number of sections of the Public Health Law of the State to which we now pass.

The State has a sanitary code of its own in respect of which the Legislature has made this declaration: " No provision of the [State] sanitary code shall relate to the city of New York or any portion thereof, and every provision of the [State] sanitary code shall apply to and be effective in all portions of the

state except the city of New York unless stated otherwise " (Public Health Law, § 2-b). The State Commissioner of Health may not supervise the work of the health authorities in the city of New York (Public Health Law, § 4). The powers and duties of local boards of health are regulated by article 3 of the State Public Health Law; but (as that same article says) thirty-eight of the forty sections thereof " shall not be construed to affect, alter or repeal laws now in force relating to the board of health of the city of New York nor the sanitary code duly adopted and now in force in such city " (Public Health Law, § 38). Article 20 of the State Public Health Law, which makes provisions for the registration of births and deaths says: " Nothing in this article shall be construed to affect, alter, or repeal laws now in force applying to the city of New York " (Public Health Law, § 394).

The intent of the Legislature in providing for such a statutory scheme seems to us to have been simply this: The Sanitary Code of the City of New York is to have within that city the force and effect of State law while elsewhere in the State the Sanitary Code and Public Health Law of the State are to be supreme (cf. *People* v. *Blanchard*, 288 N. Y. 145).

Whether the State Public Health Law may be applicable within the city of New York to situations not provided for by the Sanitary Code of that city is a question that is not here presented.

The right to resort to means competent to compel the production of written as well as oral testimony has long been regarded as not less than essential to the very existence and constitution of a court at common law. But persons subpœnaed may nevertheless assert against the compulsion of such process whatever privileges they may enjoy under the common law or by statute (see *American Lithographic Co.* v. *Werckmeister*, 221 U. S. 603; 8 Wigmore on Evidence [3d. ed.], § 2191, pp. 62–63). Section 33 of the Sanitary Code of the City of New York gave privacy to the confidential medical report here in question as a means of equipping public officials for the discharge of functions committed to them for the public good. Whether the reasons in favor of such a privilege outbalance the reasons that may be urged against it was here a legislative question which, since it has been settled by the authorities having jurisdiction, cannot

be reagitated in the courts. All in all, then, section 33 of the Sanitary Code of the City of New York is quite consistent with section 119 of the State Workmen's Compensation Law and does not conflict with the provisions of subdivision b of section 558 of the charter of the city, to which we have referred (cf. *Thomas v. Morris,* 286 N. Y. 266, 269–270).

As appellant here, the carrier also complains of a so-called "favored and exceptional position" which the City of NewYork is said to hold as an employer of labor by reason of an asserted "unrestricted access which it has to the files of its own Department of Health". On that basis, section 33 of the City Sanitary Code is said to produce "an unconstitutional, unequal protection of the laws." The answer is plain. Section 33, we repeat, makes a "confidential medical report" open to inspection only "for scientific purposes approved by the Board of Health."

Section 33 of the Sanitary Code of the City of New York was adopted, as we have said, in 1938. Since that time, however, the Legislature has twice declared that no provision of the State Sanitary Code shall relate to the City of New York or any portion thereof (see Public Health Law, § 2-b, as amd. by L. 1946, ch. 166, § 2, as amd. by L. 1947, ch. 293, § 1). This tacit statutory sanction of the policy of section 33 of the Sanitary Code of the City of New York leaves no room for judicial consideration of any contrary policy (*Messersmith* v. *American Fidelity Co.,* 232 N. Y. 161, 165).

The order should be affirmed, with costs.

FROESSEL, J. (dissenting). The basic question before us on this appeal is the validity of subdivision (c) of section 33 of the Sanitary Code of the City of New York, upon which respondent relies for its refusal to obey the subpœna duces tecum issued herein. As now written, this section, with respect to the so-called "confidential medical report",

i. creates a new "confidential and privileged communication";

ii. renders it immune from subpœna, and;

iii. thus creates, by virtue of its unavailability, a new rule of evidence by rendering it inadmissible in any action or proceeding, however material or competent it may be;

iv. forbids inspection " for any reason whatsoever, other than for scientific purposes approved by the [New York City] Board of Health ", but

v. allows " access " thereto by authorized funeral directors (subd. [f]) ; and

vi. is, of course, limited in its operation to the City of New York only.

It was not a part of the existing Sanitary Code on January 1, 1938, when said code was continued by the Legislature and given the force and effect of law (New York City Charter, § 558, subd. a). It was thereafter adopted by the board of health on December 12, 1938, in place of former section 33, purportedly pursuant to subdivision b of section 558 of said charter, which empowered said board

(1) " to add to and to alter, amend or repeal any part of the sanitary code ";

(2) to " publish additional provisions for the security of life and health in the city ", and

(3) to " confer additional powers on the department not inconsistent with the constitution or laws of this state or with this charter ".

Its validity must therefore rest upon the board's power under this statute.

I agree with the majority that the section under consideration was meant to be a bar to any juridical evidentiary use " of a confidential medical report " filed in accordance with the requirements, but deny the power of the board to enact such provision under the statutory authorization granted in subdivision b of section 558.

(1) That the board was not authorized " to add to and to alter, amend or repeal any part of the sanitary code " in any manner it pleased requires no citation of authority; the Legislature may not be deemed to have granted the board such unlimited and plenary power, and, without a guide or standard, it would be invalid (*Matter of Levine* v. *O'Connell*, 300 N. Y. 658; *Packer Collegiate Inst.* v. *University of State of N. Y.*, 298 N. Y. 184, 190).

(2) Authority to " publish additional provisions for the security of life and health in the city " furnishes such a guide or

standard. The question, then, naturally presents itself: does the challenged enactment provide "for the *security* of *life* and *health*"? The corporation counsel in his brief states: "It is obvious that the Board of Health adopted new § 33 because it was of the opinion that disclosure in a death certificate of the cause of death would in many instances bring shame or discredit on the deceased and on those who survived him without in any way serving the public interest." This appears to be its real purpose, for what scientific purposes are served by secreting statistics? How are life and health secured by this provision? As we said in *Thomas* v. *Morris* (286 N. Y. 266, 269), "Hidden in the files of the health office, it serves no public purpose except a bare statistical one."

There is no counterpart to this provision in the law obtaining throughout the State. On the contrary, verified copies of death certificates containing the cause of death are issued upon request, subject to regulations by the State Commissioner of Health throughout the State, outside the city of New York (Public Health Law, §§ 377, 389, 391). Prior to the amendment of section 33, such certificates were for many years likewise procurable from the New York City Board of Health upon payment of a nominal fee. In *Thomas* v. *Morris* (*supra*), an action to recover damages for the death of plaintiff's intestate, we held that certain records with respect to a communicable disease, kept by the Suffolk County Commissioner of Health in the course of his official duties, may be made available to plaintiff through a subpœna duces tecum; that no privilege attaches to these records, and that the public policy of the State as expressed in the Public Health Law and the State Sanitary Code confers no such privilege; that such privilege does not exist unless conferred by some statute. We have no statute here empowering the board of health to confer such privilege.

There are no special local conditions surrounding the cause of death of residents in the city of New York any different from those in the rest of the State; scandal, shame and discredit affect all people alike; and there is no reasonable basis for the inflexible regulation so far as the security of life and health are concerned. It is quite different when the board of health adopts reasonable regulations with respect to the control of local epi-

demics, or in many other situations peculiarly affecting the life and health of the people of the city of New York, such, by way of illustration, as protecting the purity of New York City's milk supply (*Matter of Stracquadanio* v. *Department of Health,* 285 N. Y. 93); but even in that case they "must be based upon special conditions existing in the city" (*Matter of Kress & Co.* v. *Department of Health,* 283 N. Y. 55, 59). If it is contended that inspection must be denied to insure the accuracy of these reports, the answer is that we may not assume that physicians will file untrue medical reports in any event; but certainly there can be no doubt that reasonable safeguards permitting limited inspection would produce reports as accurate as those barring all juridical inquiry. The enactment here, with its complete bar to inspection for any purpose whatsoever (except scientific purposes), is so unyielding that not even the commissioner of health is permitted to allow inspection; it has no real relation to the security of *life and health* in the city, and "serves no public purpose except a bare statistical one."

(3) Subdivision (c) of section 33 is obviously inconsistent with the general laws and public policy of the State. Its inconsistency with the Public Health Law of the State has already been indicated. While the case before us deals especially with a subpœna issued in a workmen's compensation proceeding and on behalf of a carrier, it may in another case be desired by the widow or parent of a workman, or by the defendant in a criminal proceeding, in which liberty or life may be involved. The provision assumes to exercise a most sweeping power, and purports to render the records in question immune generally from subpœna, thus limiting the power not only of State agencies, such as the Workmen's Compensation Board (Workmen's Compensation Law, §§ 49-a, 118, 119, 142, subd. 3), but also of the courts themselves (Civ. Prac. Act, §§ 63, 403–414) and grand juries (Code Crim. Pro., §§ 252, 261). Certainly it cannot be claimed that subpœnas will unduly interfere with the board's custody or its use of the records for scientific purposes, for our Civil Practice Act and the Rules of Civil Practice already contain definite provisions in the way of safeguards for subpœnas duces tecum served upon "a department or bureau of any municipal corporation" by

the substitution of copies for original records (Civ. Prac. Act, § 412; Rules Civ. Prac., rule 162).

The provision in question establishes a new class of con-fidential communications with respect to New York City deaths, not found in the Civil Practice Act nor in other statutes enacted by the State Legislature. The section may not be upheld on the ground that it is designed to supplement the existing statutory privilege applying to the physician-patient relationship (Civ. Prac. Act, § 352) since that privilege may be waived, and is waived in a proceeding such as the instant one (*Matter of Maryland Cas. Co. [City of New York]*, 274 App. Div. 211; see 8 Wigmore on Evidence [3d ed.], § 2377, subds. [e], [d], pp. 778–779).

Moreover, by making the report unavailable, the section creates a new rule of evidence contrary to the evidentiary rule prevailing throughout the State generally by rendering inadmissible confidential medical reports arising out of New York City deaths in any action or proceeding, no matter how vital, competent and material that evidence may be, even in a case where, as here, the decedent's relatives assert a claim based on cause of death.

The power to limit our courts, grand juries, and all government agencies should not be implied. In *People* v. *County of Westchester* (282 N. Y. 224, 232) and *Matter of Kress & Co.* v. *Department of Health* (*supra*, p. 60), we quoted with approval from Presiding Justice LAZANSKY's opinion in *Jewish Consumptives' Relief Soc.* v. *Town of Woodbury* (230 App. Div. 228, 234, affd. 256 N. Y. 619), as follows: " The authority of a municipality to abrogate State law is never implied or inferred. It is only derived from express grant, never from a general grant of power. A State policy may not be ignored by a municipality unless it is specifically empowered so to do in terms clear and explicit." (See, also, 2 Dillon on Municipal Corporations [5th ed.], § 601; *Mills* v. *Sweeney*, 219 N. Y. 213, 219.) No such express grant of power will be found in subdivision b of section 558 of the New York City Charter.

The aim of the section under review is, of course, well-intentioned, but in my opinion it is not consistent with the laws of this State nor with its public policy. There is a vast differ-

ence between denying inspection to those not having a legitimate interest in the record, on the one hand, and barring inspection, without any qualification whatsoever, on the other. The purpose of the board could well be achieved validly with reasonable and proper safeguards to prevent indiscriminate inspection but allowing inspection under proper supervision. An illustration of this procedure is found in section 20 of the Mental Hygiene Law. It requires the Department of Mental Hygiene to keep in its office certain records, " accessible only to the commissioner, medical director and such other officers and subordinates of the department as the commissioner may designate, except by the consent of the commissioner or *an order of a judge of a court of record* ". (Emphasis supplied.) Similarly, subdivision 9 of section 34 requires the director of each State institution to make a record which " shall be accessible only to the director and such officers and subordinates of the institution as he may designate and to the commissioner and his representatives, except on the consent of the commissioner or *an order of a judge of a court of record.*" (Emphasis supplied.) These records are probably just as embarrassing to the relatives of the inmate as the confidential death report would be to the relatives of a decedent. Yet, it is significant to note that the Legislature has made them available in proper cases upon a court order.

The prevailing opinion properly disposes of the limited constitutional objection raised here, and, since no other has been presented here or below, we may not now consider any other (*Matter of O'Neill* v. *Board of Regents of Univ. of State of N. Y.,* 298 N. Y. 777). However, I am constrained to conclude that subdivision b of section 558 of the New York City Charter did not authorize and empower the board of health to enact subdivision (c) of section 33 of the Sanitary Code in its present form, for the reason that said section does not provide " for the security of life and health "; that it is inconsistent with the laws of this State and its public policy; and that it constitutes an unwarranted and invalid interference with the right to the production of documents, as permitted not only at common law but by our many related State statutes as well.

The order should be reversed and the motion remitted to Special Term for further proceedings not inconsistent with this opinion.

LEWIS, DESMOND, DYE and FULD, JJ., concur with LOUGHRAN, Ch. J.; FROESSEL, J., dissents in opinion in which CONWAY, J., concurs.

Order affirmed.