## UNITED STATES v. HOXSEY CANCER CLINIC et al.
### Civ. No. 4144.

District Court of the United States
N. D. Texas, Dallas Division.
Dec. 21, 1950.

Frank B. Potter, U. S. Atty., Fort Worth, Tex., O. M. Harrell, Asst. U. S. Atty., Dallas, Tex., James McGuire, Food and Drug Administrator, Washington, D. C., for the complainant.

Herbert K. Hyde, Oklahoma City, Okl., James H. Martin, Dallas, Tex., for the respondents.

ATWELL, Chief Judge.

On November 15th, 1950 this complaint was filed, charging that the proceeding is brought under Sec. 302(a) of the Food and Drug Act, 21 U.S.C.A. § 332(a).

That the respondents have been and are now introducing and causing to be introduced, and delivering and causing to be delivered for introduction into interstate commerce at Dallas, Texas, in violation of Sec. 301(a) of the Act, and 21 U.S.C.A. § 331(a) consignments of articles of drug within the meaning of Sec. 201(g) of said Act, which are misbranded within the meaning of Sec. 502 of the Act.

That the respondents promote the sale of, distribute and deliver such articles of drug from their clinic at Dallas, Texas, to physicians, and, practitioners in other portions in various parts of the United States. That such articles consist of liquids, intended for use in the mitigation, treatment and cure of cancer in man. One of such liquids is brownish-black in color, and the other, pink. Such liquids are dispatched in interstate commerce in sixteen-ounce bottles and bear the label on which appears essentially the following, to-wit:

"H.C.C. 4507 Gaston Ave., Dallas, Texas, ——— No.— Dr. ——— One teaspoonful after meals and at bedtime. Keep cool."

That in some instances, a number appears following, "No." In some instances the name of J. B. Durkee appears following, "Dr." That the respondents in the distribution and delivery of such drugs to physicians and practitioners, dispatch such brownish-black and pink liquids in concentrated form also in sixteen-ounce bottles. The brownish-black concentrate bears a label on which appears, "From: Hoxsey Cancer Clinic 4507 Gaston Av. Dallas, Texas. To: Regular concentrate add enough water to make one gallon. Shake well."

The pink concentrate bears a label on which appears, "From: Hoxsey Cancer Clinic 4507 Gaston Ave. Dallas, Texas. To: Lactate Concentrate add enough Lactate to make one gallon. Shake well."

That consignments of said drugs which are distributed and dispatched to physicians, practitioners, and other persons by the respondents are misbranded within the meaning of Sec. 502(a) of the Act, 21 U. S.C.A. § 352(a), in that their labeling, namely, the booklet entitled, "Hoxsey Cancer Clinic Specializing in Cancer," accompanying said drugs, contains general and specific statements which represent and suggest that said drugs are efficacious in the treatment, mitigation and cure of cancer in man, which statements are false and misleading since said drugs are not efficacious in the treatment, mitigation and cure of cancer in man.

That complainant is informed and believes that unless restrained by the court the respondents will continue to introduce and cause to be introduced and deliver and cause to be delivered for introduction into interstate commerce the said drugs misbranded in the manner aforesaid.

Complainant then prays for a perpetual injunction from directly or indirectly introducing or causing to be introduced and delivering or causing to be delivered for introduction into interstate commerce, the said drugs or any similar article of drug which is misbranded within the meaning of the Act.

On December 5th, 1950, the respondents denied the allegations and, in that connection, said that respondents do specialize in the treatment of cancer which is done under the direction of duly licensed doctors; that they do not sell medicine, offer none for sale, and do not sell nor distribute medicine to the public.

That the allegations that they promote the sale, or, distribution, or, deliver drugs to physicians and practitioners in other parts of the United States, they deny.

They plead that any medicine shipped by them is that medicine which has been prescribed by a doctor and sent to a patient who is under treatment; that no patient received medicine from the clinic until after said patient had appeared in person and after having been examined by the Medical Director of the clinic, which medical examination includes blood tests, urinalysis and x-ray studies, and after said examination a prescription is made by said doctor. That the respondents have no medicine for sale and do not offer medicine for sale, nor does it advertise or distribute medicine.

Respondents deny that the booklet referred to by complainant is a label within the meaning of the Food and Drug Act. That the booklet nowhere mentions any particular medicine, nor is the same an advertisement of the medicine. Nor is it the booklet now sent out by the respondents, but is one formerly mailed by respondents and that the booklet which is complained of by the complainant specifically refutes what complainant has alleged.

That in this connection, the first six pages of said booklet contain an address by Dr. Durkee made in Los Angeles, California, on October 17th, 1947, which, among amination includes blood tests, urinalysis other things, says:

"The Hoxsey method of treatment is designed primarily to normalize the body chemistry and control normal cell metabolism—it would be well at this point to tell you about our physical equipment and our method of approach in treating a person who has cancer. Our clinic is equipped with the best diagnostic facilities obtainable. When a patient enters our clinic every laboratory procedure is used—our

treatment consists basically of two groups of medications plus the supportive treatment that may be necessary.

"Our treatment is designed to normalize first of all the inorganic blood chemistry—we are able to show in our laboratory the changes in the blood chemistry of the patient as he undergoes treatment."

The booklet, on page 7, among other things, contains the following: "The Hoxsey method of treatment is not a cure-all, nor does the clinic guarantee to cure, any case, which is the practice of quacks and charlatans—Patients must come to the clinic for a complete examination and laboratory analysis."

"That the foregoing quotations are not isolated statements, but are representative of the matters and things contained throughout said booklet, to-wit: a partial description of the Hoxsey method of treatment of cancer."

I have quoted and summarized rather fully the pleadings of each side in order to give to each side that fairness of word picture which the importance of the case justifies and demands.

After six days of the introduction of voluminous verbal testimony from both physician and patient, for both sides, and voluminous exhibit from both sides, and, having in mind the court's duty to pass upon the burden of proof, the weight of the testimony, and the credibility of the witness, I make the following

### Findings of fact

1. The respondent did forward in interstate commerce to physicians in other states who had been present at the Hoxsey Clinic and studied its methods and efficacy for a considerable time, and were using such medicines and prescriptions in their similar treatment.

2. That accompanying such shipments were booklets containing the statements and illustrations quoted in the pleadings of both complainant and respondents.

3. That the respondents' treatment is not injurious. Some it cures, and some it does not cure, and, some it relieves somewhat. That respondents do not guarantee to cure.

4. That the statements contained in said labels so pleaded, are neither false nor misleading. That if in doubt as to the effectuality of the treatment, they take the patient on trial, and, frequently, without charge to the patient.

5. That the percentage of efficient and beneficial treatments by respondents is reasonably comparable to the efficiency and success of surgery and radium, and without the physicial suffering and dire consequences of radium, if improperly administered, and surgery, if not successful in completely removing the entire malignant portion.

6. That cancer is an aggregation of outlaw cells with the propensity to migrate and grow in size and in the territory covered and the definite destruction of the body, or, a serious portion thereof.

7. That the respondents do have two basic medicines to which are added, if and when the examination of the patient calls for such additions, a large number of drugs and mitigations in a separate room at the clinic. That it also subtracts and changes the basic elements of the two medicines as indicated, in the judgment of the Medical Director of the clinic when indicated by the examination of the patient, but that no such prescription accompanies shipments made in interstate commerce to the doctors in other states who are using the Hoxsey method, nor does the same appear upon the bottles or receptacles of the medicine.

8. That the Food and Drug inspectors seized medicines and pamphlets and booklets such as are pleaded, from the doctors in other states who have been using the Hoxsey method, and which came interstate commerce. That such seizures were prior to the institution of this suit, since which time the respondents have made no interstate shipments of either pamphlets, or, medicines.

### Conclusions of law.

It is not necessary that mislabeling, or misbranding within the meaning of the Act, shall actually be on the container, but

468

they may accompany it, or, reach the user in some other manner. There is some authority to the contrary, but I think the case of Kordel v. United States, 335 U.S. 345, 69 S.Ct. 106, 93 L.Ed. 52, and the case of United States v. Urbuteit, 335 U.S. 355, 69 S.Ct. 112, 93 L.Ed. 61, are controlling.

The exemptions provided for in the Act with reference to physicians' prescriptions, and the placing of the contents on the bottle, or, container, are not applicable, nor can they be of any use to the respondents here, because the respondents' method in forwarding articles and pamphlets to the physicians in other states who were using the method and treatments were not so displayed. Nor can the plea of good faith, or, the charitable inclinations of the respondents save them from the rigors of the Act. Nor can the discontinuance of the practice of shipments to physicians in other states, save the respondents from the injunctive features of the Act, even though the chancellor, speaking in equity, will not require that which is useless.

Nevertheless, the facts disclosed by the testimony and found as above, as well as the failure of the government to successfully carry the burden and show by a preponderance of the testimony, the correctness of its charges, merits, and must have, a refusal of the injunctive relief sought, and a dismissal of the bill, and such order and decree is, accordingly, announced.