METALLIC FLOWERS, INC., Respondent, *v.* CITY OF NEW YORK et al., Appellants.

First Department, June 25, 1957.

*Anthony Curreri* of counsel (*Seymour B. Quel* with him on the brief; *Peter Campbell Brown, Corporation Counsel,* attorney), for appellants.

*Borris M. Komar* for respondent.

FRANK, J. This is an appeal by the defendants from a judgment granted the plaintiff, after trial. The judgment restrains the defendants from interfering with the advertising, manufacture, distribution and sale of certain metal bracelets seized by the defendants, and directs the return of the bracelets and advertising matter used in connection therewith.

The issues involve the recurrent conflict between property rights and State police power in respect to public health.

In March, 1955, the defendant city, through its Department of Health, seized the above-mentioned property pursuant to section 135 of the Sanitary Code of the City of New York empowering the Department of Health to take such action "where * * * there is probable cause to believe that the article is * * * misbranded". The defendants contend that the plaintiff's bracelets were misbranded because their labeling was "false and misleading (in any particular)" (Sanitary Code, § 116, subd. 2, par. [a]) in that they did not transmit the electro-therapeutic qualities claimed and had no medical or therapeutic effect whatsoever.

The plaintiff marketed the metal device claiming it utilized a thermopile principle which generates a very low electric current, because of the various metallic elements used in the bracelet and the temperature differential between the human body and the air. The plaintiff asserts that the bracelet is a new method of ambulatory treatment for the relief of symptoms arising from a variety of unrelated diseases. On the box in which it is enclosed appear the words "Electro-Therapeutic Bracelet. NEW! Relieves aches and pains by simple external application only." The package includes a detailed pamphlet purporting

to explain the manner in which the bracelet is to be used, states that quick relief is possible, often overnight, that there are permanent benefits, and that no toxicity, burns or overdose are possible from its use. The printed blurb asserts that the device has high therapeutic efficiency and may be used in conjunction with short-wave diathermy, infra-red radiation and heating pads, which are called supplementary forms of treatment. In bold type, the bracelet is recommended for use in fractures and dislocations, joint sprains, myositis, bursitis, neuritis, sciatica, arthritis, acute and chronic sinusitis, and for respiratory diseases like bronchitis and pleuritis. These ailments, it is claimed, are cured or alleviated by the simple method of wearing the bracelet on the wrist. In further explanation, the brochure states, '' the E. T. B. should be worn on the left wrist if the left knee aches.'' The defendants maintain that the assertions made in the pamphlet are false and misleading, and for that reason the bracelet is mislabeled.

Although the plaintiff asserts that the device was approved by a number of physicians, on the trial it relied principally upon lay witnesses, who claimed beneficial results, to establish the truth of its assertions that the bracelets actually had therapeutic value and that therefore there was no mislabeling.

The defendants called medical and other expert witnesses who, in substance, testified that the current generated by the bracelet was so infinitesimal that it was incapable of producing any of the benefits claimed for it in the printed matter on the box and the pamphlet enclosing the device. Tests made by a physicist, employed by the Federal Food and Drug Administration and previously by the Bureau of Standards, are very revealing. For example, the current from an ordinary standard flashlight battery held in the hands was five hundred thousand to a million times greater than that of the bracelet. Standard measuring devices failed to register any greater current emanating from the bracelet, than the human body itself produces. Dr. Rogoff, a specialist in physical medicine and rehabilitation and a clinical professor at one of the medical schools, concluded from the tests which he made that the current generated by the bracelet could have no effect whatever upon the human body under any circumstances.

The absurdity of the claims made by the plaintiff for its device is probably best demonstrated when one is made aware that the current used in accepted medical galvanic treatment would be 250 million times greater than that induced by the bracelet.

The testimony of lay witnesses as to therapeutic value has been held to have very little weight in litigation involving mislabeling. (See *United States* v. *Hoxsey Cancer Clinic*, 94 F. Supp. 464, revd. on other grounds 198 F. 2d 273, cert. denied 346 U. S. 897; *United States* v. *50 3/4 Dozen Bottles*, 54 F. Supp. 759, 762.)

The Sanitary Code provision (§ 116) and the Education Law (§ 6808) applicable to misbranding, reiterate almost *in haec verba* the phrasing of section 502 of the Federal Food, Drug, and Cosmetic Act of 1938 (U. S. Code, tit. 21, § 321 *et seq.*). That act completely replaced the Food and Drug Act of 1906 as amended in 1912.

The Federal courts in construing the earlier enactments, held that they were intended to reach only false and misleading statements concerning the ingredients of the products covered thereunder, and that statements regarding therapeutic results, even though false and misleading, were beyond the purview of the legislation (*United States* v. *Johnson*, 221 U. S. 488 [1911]; *United States* v. *American Druggists' Syndicate*, 186 F. 387 [1911]).

In the 1938 Act, devices, i.e., "instruments, apparatus, and contrivances, including their components, parts, and accessories, intended (1) for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; or (2) to effect the structure or any function of the body of man or other animals" (§ 201, subd. [h]; U. S. Code, tit. 21, § 321, subd. [h]), were for the first time included within the scope of Federal regulation. Section 502 (U. S. Code, tit. 21, § 352) of the new act thus provided, in part: "A drug or device shall be deemed to be misbranded—(a) If its labeling is false or misleading in any particular." Thus, the act condemned all "false or misleading" claims, including those of therapeutic value, and no longer required, with respect to the latter, that they be shown to be "false and fraudulent."

In considering the questions of fact involved here, the learned Special Referee reached his determination upon the Federal law and cases concerning misbranding based upon false and fraudulent therapeutic claims under the 1906 Act as amended in 1912. He concluded that the proof failed to establish willful misrepresentations as required under the legislation referred to. The 1938 Act, however, does not require proof of fraud or willful misrepresentation. It is sufficient if the claims as to therapeutic value are false or misleading (U. S. Code, tit. 21, § 352 subd. [a]; *United States* v. *Ghadiali*, 165 F. 2d 957, cert. denied 334 U. S. 821). Intent to deceive is no longer material in a

charge of misbranding (*United States* v. *Buffalo Pharmacal Co.*, 131 F. 2d 500, revd. on other grounds *sub nom.* *United States* v. *Dodderweich*, 320 U. S. 277; *United States* v. *11 1/4 Dozen Packages*, 40 F. Supp. 208).

Thus the factual determination was not predicated upon the applicable law as it presently exists. We are constrained, therefore to reverse Special Term's findings of fact.

Upon the evidence, we must find that plaintiff's bracelets were misbranded and are within the prohibition of the Sanitary Code (§ 116). It remains to consider whether the summary seizure can be justified (Sanitary Code, § 135).

Historically, a distinction has existed as to law and procedure in matters of health and education, between the City of New York and the rest of the State. The statutory scheme provided for the City of New York clearly indicates the difference. The Sanitary Code was designed to have the force and effect of State law within the city of New York, while elsewhere in the State the Public Health Law and the applicable provisions of the Education Law which derive directly from its control. (*Cartwright* v. *City of Cohoes*, 39 App. Div. 69, affd. 165 N. Y. 631; *Matter of Bakers Mut. Inc. Co.* [*Dept. of Health*], 301 N. Y. 21; *People* v. *Blanchard*, 288 N. Y. 145; *Matter of Investigation, County of Kings*, 286 App. Div. 270, motion for leave to appeal denied 309 N. Y. 1031.) While the New York City Charter (§ 558) provides that this power of the Health Department must be exercised in a manner not inconsistent with the State statutes, it does not bar local code provisions that are additional to the State enactments. (*Matter of Kress & Co.* v. *Department of Health*, 283 N. Y. 55, 59.) The State has not completely preempted the field and the code provisions are therefore a valid exercise of power (*People* v. *Lewis*, 295 N. Y. 42; *People* v. *Sampsell*, 248 N. Y. 157; *People* v. *Klufas*, 2 A D 2d 958).

This is of course not a criminal proceeding. Essentially summary seizure is a proceeding in rem and the same procedural due process as may be required by an in personam action is not necessary. (*Gelston* v. *Hoyt*, 16 U. S. 246, 310, 316; *Grannis* v. *Ordean*, 234 U. S. 385, 394.) In this case, at the time its property was taken, the plaintiff was served with a notice of seizure, was thus apprised of the name of the agency and the section of the code involved, and was thereby enabled to commence this action. In seeking relief by this means, the plaintiff tendered the issue of misbranding of its product.

Property found subject to forfeiture and destruction upon seizure is properly regarded as contraband. It includes gambling devices and paraphernalia, prohibited weapons, drugs,

contaminated food, and all counterfeits of legal tender as well as those simulating documents used in trade. Misbranded articles are inherently invalid and illegal. The branding is not separated from the thing itself and together they are as one. The seizure of such goods is justified because the danger exists that the property deemed malefic will be distributed and the public defrauded absent a seizure and pending a proceeding to determine the validity of the property or its use.

It has been suggested that to assure procedural due process, the section of the Education Law (art. 137, § 6815) which provides for a jury trial must be imported into the code provision here involved. We cannot so hold. The requirement for due process is fully met when a forum exists in which an aggrieved person after notice has the right to be heard or to defend. (*Snyder* v. *Massachusetts*, 291 U. S. 97, 105; *Twining* v. *New Jersey*, 211 U. S. 78, 110, 111; *Powell* v. *Alabama*, 287 U. S. 45, 68.) It has been repeatedly held that in cases affecting the liberty of individuals, which is a fundamental right certainly transcending property rights, due process does not prohibit the restriction or abolition of trial by jury. (*Fay* v. *New York*, 332 U. S. 261; *Farrell* v. *Lanagan*, 166 F. 2d 845, 847, cert. denied 334 U. S. 853; *Palko* v. *Connecticut*, 302 U. S. 319, 324; *Brown* v. *Mississippi*, 297 U. S. 278, 285; *Snyder* v. *Massachusetts, supra*, p. 105.)

The plaintiff has never been denied the right to test and determine the propriety of the seizure here by an action which would include a determination of disputed facts by a jury. An action to replevy or for conversion was always available to it. The plaintiff, however, preferred a nonjury adjudication. It was not compelled by section 135 of the Sanitary Code to demand the relief it seeks. The plaintiff quite voluntarily and by its own choice of the numerous remedies available, undertook to submit the issues to a court of equity, for the purpose of invoking mandatory injunctive relief.\*

The acknowledged police power of a State often extends to

---

\* We are aware of *Colon* v. *Lisk*, 13 App. Div. 195, affd. 153 N. Y. 188, and that portion of *People ex rel. Lemon* v. *Elmore*, 256 N. Y. 489, 496-498, which deals with "Penalty Tax". These cases, we believe, are inapposite. They involve a penalty forfeiture of property not in itself contraband but rather put to an illegal use and in furtherance of the commission of a crime. Thus, in the *Colon* case (which did *not* involve the health, morals, safety or welfare of the public) a vessel used to commit a misdemeanor was seized and a forfeiture attempted. In the *Lemon* case, a house used for prostitution was made subject to a penalty tax. These cases would be applicable if, in the matter under consideration, the health authorities had seized the machinery by which or the premises in which the bracelets were manufactured.

destruction of contraband property. It has long been established that in the exercise of its police power, the State may summarily seize or destroy diseased cattle, contaminated food, obscene publications, illicit intoxicants, narcotics, dangerous structures and other property that menace public health, safety and morals. The person whose property is so seized is not deprived of a remedy. Obviously, if the property seized is found to be contraband, unlawful, or used in violation of law, the owner has no reason to complain. If not, he may replevy the property, or, if it has been destroyed, may have an action for damages. (*Lawton* v. *Steele,* 152 U. S. 133, 142, affg. *Lawton* v. *Steele,* 119 N. Y. 226.)

In the interest of uniform policy, the legislative and administrative authorities of the city might well consider the merits of adopting a procedure comparable to that prescribed by the State. However, while it is undoubtedly desirable that a charter or code provision be enacted to establish a method, either administrative or judicial, for the owner of goods alleged to be contraband, to test the question and determine his right to repossess his property, such a provision is not essential in this case. Here, the plaintiff has invoked a judicial proceeding available to it and submitted the question of misbranding for determination. Under the circumstances there has been no denial of due process.

The summary seizure and destruction of property, like gambling equipment, have been held not violative of constitutional guarantees. (Penal Law §§ 978, 983, 984; *People* v. *Adams,* 176 N. Y. 351.) The summary seizure of property subject to excise or revenue duties, counterfeit currency, lottery tickets and articles unlawfully in the possession of a person for the purpose of sale or distribution has been held not to be unreasonable. (*Boyd* v. *United States,* 116 U. S. 616, 623–624.) Search and seizure without a warrant are not condemned at common law nor under the Constitution (4th Amdt.). Only unreasonable search and seizure are forbidden. (See *Carroll* v. *United States,* 267 U. S. 132, 146.) " The right to search and the validity of the seizure is not dependent on the right to arrest." (*Carroll* v. *United States, supra,* p. 158.)

It cannot, in any event, be successfully argued that a search and a seizure properly conducted in the first instance become illegal because of a failure thereafter to commence forfeiture proceedings. Thus, in *United States* v. *Lee* (274 U. S. 559, 563) Mr. Justice BRANDEIS writing for the court stated: " The failure of the Government to institute thereafter proceedings

for forfeiture of the motor boat and the liquor did not, by retroaction, render illegal either the seizure or the search.''

The character of the offense does not affect the validity of the seizure. The legality of the seizure depends upon the existence of probable cause and the belief by one exercising prudence and caution that an offense has been committed. (*Carroll* v. *United States, supra.* p. 161.)

This device, since we find it, upon the proof adduced at the trial, to have been misbranded and to be violative of the Administrative Code, is likewise contraband. To determine the propriety of the seizure after the fact does not impinge upon the constitutional guarantees of due process. (*Yakus* v. *United States,* 321 U. S. 414, 442; *Wood* v. *United States,* 41 U. S. 342, 358; *North Amer. Stor. Co.* v. *Chicago,* 211 U. S. 306, 315–316.)

The plaintiff has availed itself of the right to test the propriety of the seizure of its property in this action and thus there has been no denial of due process.

The judgment should be reversed and the complaint dismissed. Settle order.

RABIN, J. (dissenting). In this action brought by the manufacturer of a medical device known as an electro-therapeutic bracelet against the City of New York and its Department of Health for an injunction against defendants' interference with the advertising, manufacture, distribution and sale of the bracelets and for an order directing the return of certain bracelets and advertising matter seized by defendants, defendants appeal from a judgment, without a jury, in favor of plaintiff for all relief prayed for in the complaint.

It is acknowledged of record that, without notice or hearing, the defendants seized at the office of the plaintiff over 100 of the aforesaid bracelets and more than 2,000 pieces of literature, and, further, that defendants have interfered with the advertising, sale, and distribution of the bracelets. In defense, defendants charge that the labeling of bracelets is `` false and misleading '' within the meaning of section 116 (subd. 2, par. [a]) of the Sanitary Code, and that in the circumstances the seizure was authorized by section 135 of that code. The trial court found that there was no misbranding under section 116 (subd. 2, par. [a]).

I believe that the action of defendants in seizing and condemning without notice or hearing must be proscribed and relief accorded to plaintiff without reference to whether plaintiff has falsely labeled its product. It has been said that `` the right to be heard before being condemned to suffer grievous loss of

any kind　\*　\*　\* is a principle basic to our society." (*Anti-Fascist Committee* v. *McGrath,* 341 U. S. 123, 168.) This injunction may be diregarded only in those rare and isolated instances where the danger threatened is so great and imminent as to necessitate seizure or destruction without hearing. (See *Yakus* v. *United States,* 321 U. S. 414, 442–443.) But no such disastrous prospect was the basis for the summary action here taken. Admittedly the sole immediate risk caused by plaintiff's bracelets was that wearers might be induced by plaintiff's claims to delay competent medical treatment for the condition such wearers hoped to alleviate by means of the plaintiff's bracelets. In this view not only the exceptional but every article allegedly mislabeled as to its ameliorative or curative potential could be seized and destroyed summarily. We believe the risk disproportionate to the summary nature of the action taken by defendants.

The applicable legislation does not authorize the extraordinary procedure employed by defendants. Section 135 of the Sanitary Code permits the seizure and confiscation of an article where an inspector of the Department of Health finds " there is probable cause to believe that the article is　\*　\*　\* misbranded ". The section fails, however, to define the procedure that is to be followed in making a seizure. We do not think that the section should be construed as authorizing seizure without due process for to do so would raise a serious question of constitutionality. Every presumption favors the validity and constitutionality of a statute (*Fearon* v. *Treanor,* 272 N. Y. 268, 274). Applying that principle here, I think it may fairly be said that in enacting this section authorizing seizure of a misbranded article, it was intended that any such seizure would be made in a lawful manner and in accordance with recognized concepts of notice and due process.

The Sanitary Code, as indicated, is silent with respect to the procedure to be followed in seizing a misbranded article. If it be construed as authorizing seizure in the manner employed by defendants, I might be confronted with problems of conflict between the local legislation and the corresponding provisions of the State law which explicitly and clearly outline the steps to be taken where an article is seized.

Article 137 of the Education Law, establishing the New York State Board of Pharmacy, is likewise concerned with mislabeling of devices such as those of the plaintiff. In language almost identical with that in section 116 (subd. 2, par. [a]) of the Sanitary Code, a device is " deemed to be misbranded " where " its labeling is false or misleading in any particular." (Educa-

tion Law, § 6808, subd. 2, par. a.) Any device which is so mis-branded "may be seized on petition, or complaint * * * and condemned in the supreme court". (Education Law, § 6815, subd. 1.) When the adulteration or misbranding is so great "as to be dangerous to health," seizure or quarantine by order of the secretary of the Pharmacy Board is allowed, but "a petition, or complaint, shall be promptly filed for condemnation thereof." (Education Law, § 6815, subd. 1, par. b, cl. [3].) It is thereafter provided that "in cases under this section" the procedure is to "conform, as nearly as may be, to the procedure in attachment. On demand of either party, any issue of fact joined in any such case shall be tried by jury." (Education Law, § 6815, subd. 2.)

However great the deference owing to the legislative status of the provisions of the Sanitary Code (*Matter of Bakers Mut. Ins. Co.*, 301 N. Y. 21), they may not conflict with the "laws of this state" (New York City Charter, § 558) or with the constitutional requirements of due process. (*Matter of Kress & Co.* v. *Department of Health*, 283 N. Y. 55; *F. T. B. Realty Corp.* v. *Goodman*, 300 N. Y. 140; *Jewish Consumptives' Relief Soc.* v. *Town of Woodbury*, 230 App. Div. 228, affd. 256 N. Y. 619.)

A city ordinance and a State statute covering the same field should be in harmony, for the ordinance must follow the spirit of the higher statute (*Marengo* v. *Rowland*, 263 Ill. 531). And if, as stated, there be a conflict between the two, then the State law must govern (New York City Charter, § 558). That section which relates to the Sanitary Code empowers the Board of Health to confer powers on the department "not inconsistent with the constitution or laws of this state". It may be assumed, therefore, that in enacting section 135 of the Sanitary Code it was the intention of the legislators to act consistently with the laws of this State. It would seem to follow that, where, as here, the State law requires certain procedural steps either before or after seizure, i.e., a complaint or petition, a hearing and the right to a jury trial if demanded, the same requirements should, and apparently were intended to, apply to any seizure under section 135 of the Sanitary Code.

The plaintiff's right to notice and hearing before judgment was not rendered academic by the institution of these proceedings and the resultant trial on the merits. Defendants having seized plaintiff's property without process or hearing, plaintiff followed the only course it deemed available by instituting this action in equity for injunctive relief. By so doing, it cannot be said that plaintiff waived its right to a jury trial. In other words, a fundamental right guaranteed by law—in this instance

the right to a jury trial, in a proceeding initiated by defendants — is not destroyed by plaintiff's attempt to assert its rights in the present action. It is wrong doctrine that rights are lost by the mere fact of their assertion. If the victim of an unauthorized and unwarranted summary seizure is confronted with the Hobson's choice of not seeking relief or exonerating the impropriety of the procedure by seeking relief, there is no effective deterrent to such seizure.

The appellant urges review and determination of the issue whether plaintiff mislabeled even if the seizure was improper, arguing that such error can be cured by the return of the seized matter without foreclosing adjudication on the merits. But, as indicated, in a proceeding under section 135 or a criminal prosecution for violation of the Sanitary Code (see New York City Charter, § 558, subd. d), the plaintiff here would be entitled to the procedural advantages and safeguards which we accord those from whom we would take valuable rights or property. The action in equity to which plaintiff here was relegated was no adequate substitute therefor.

Accordingly, we may not in this proceeding, without those safeguards granted plaintiff by law, pass upon the basic question as to whether the article was misbranded. We do not reach or pass upon this phase of the trial court's ruling. It is our view, however, that the learned Referee erred in holding that a false and misleading claim as to a product's therapeutic effect is not actionable. In reaching that conclusion, the Referee failed to give due consideration to the Federal cases decided subsequent to the 1938 Federal Act (U. S. Code, tit. 21, § 301 *et seq.*) which indicate quite clearly that false claims as to a product's therapeutic value are actionable.

I conclude, therefore, that the injunctive relief — except the direction to return plaintiff's property — should not have been granted. Nor should the city be enjoined from taking further action provided it be lawful.

The judgment should be modified to the extent of denying all relief except that the property be returned. No costs. This disposition is without prejudice to such other and proper proceedings or prosecution as the defendants or other appropriate agency may choose to initiate and, as thus modified, the judgment should be affirmed.

PECK, P. J. (dissenting). I concur in the conclusion reached by Mr. Justice RABIN on the ground that consistency with State law requires that any condemnation proceeding taken by defendant under the Sanitary Code should accord with the pro-

cedure specified in a like case prosecuted under the Education Law.

BREITEL and BOTEIN, JJ., concur with FRANK, J.; PECK, P. J., dissents in opinion; RABIN, J., dissents in opinion.

Judgment reversed and the complaint dismissed. Settle order on notice.