223 So.2d 324 (1969)
Doyle CONNER, As Commissioner of Agriculture, State of Florida, Appellant,
v.
Reuben CARLTON et al., Appellees.
No. 37932.
Supreme Court of Florida.
May 14, 1969.
Rehearing Denied June 27, 1969.
*325 Wilton R. Miller and Jack Shoemaker, Tallahassee, for appellant.
Jones, Adams, Paine & Foster, Charles H. Damsel, Jr., and John R. Beranek, West Palm Beach, for appellees.
ERVIN, Chief Justice.
We review an appeal of Appellant Doyle Conner, as Commissioner of Agriculture for the State of Florida, from an adverse final decree of the Circuit Court of Martin County refusing to enforce or permit implementation of a program inaugurated by the Commissioner in the county to control, eradicate, and prevent the spread of brucellosis (Bang's disease) in cattle. Specifically, Appellees refused to comply with a ten days' notice from the Commissioner to present their cattle for brucellosis tests. A mandatory injunction to require their compliance was rejected in the final decree.
The program requires cattle owners to present their cattle for tests by the Commissioner's agents to determine if they are "reactors" of the disease, i.e., infected with brucellosis. If any cattle are found by such tests to be reactors they are required to be immediately branded on their left jaws with the letter "B" at least 2 inches by 2 inches, removed from the herd and sold at public auction markets and slaughtered, all within 15 days after they have been identified as reactors. The indemnity or compensation paid by the State for each animal slaughtered is restricted to not more than $12.50.
The trial court in its final decree found there was no "valid emergency under the police power of the state" which would entitle the Commissioner to proceed with the brucellosis control program in Martin County. It found the purpose of the control program was "for administrative control of the transportation of cattle, and this program is not designed to protect the health, safety and morals of the community."
The trial court further found from the evidence that brucellosis has existed in cattle in Martin County and the State for a number of years, that the incidence of such disease has not appreciably increased for some years, and
"* * * that there is no threatened or actual epidemic or emergency in the cattle industry in the State of Florida or in Martin County, Florida, due to such disease at this time. In fact, the evidence shows that during the last ten or fifteen years or more, the control of brucellosis in cattle is being accomplished quite well through a vaccination program. The Court further finds that as the bovine brucellosis eradication program is now being administered by the Commissioner of Agriculture in Martin *326 County, Florida, that is, under the tests that are being used to determine which animals are infected, some healthy animals are shown by the tests to be infected, when in fact they are not infected and such animals are required to be sent to slaughter along with infected animals and sent as infected as animals. It is true that the percentage or number of healthy animals required to be sent to slaughter along with infected animals in most instances is not large, but such percentage or number cannot be said to be insignificant, and the evidence does definitely show that some healthy animals are sent to slaughter along with the infected animals due to the ineffectiveness of the tests being used, even though the methods being used by the plaintiff [Commissioner of Agriculture] to detect the infection are those generally employed and are known to be the most effective at this time. The evidence also shows that some infected animals sent to slaughter are still productive and have a value other than a carcass value or for slaughter."
Having made the foregoing findings, the trial judge proceeded to strike down as unconstitutional F.S. Sections 585.09 and 585.10, F.S.A., which are key sections of the enabling statutes for the Commissioner's brucellosis control program. The decision also struck the rule or regulation, Section 7-C-6.02(2) (d), of the Department of Agriculture, Division of Animal Industry, adopted by the Commissioner to implement Sections 585.09 and 585.10. In holding the statutes unconstitutional our jurisdiction of this appeal was invoked.
Sections 585.09 and 585.10, to be understood, must be read in connection with related provisions of Chapter 585, F.S. Such related provisions (a) identify and declare brucellosis and other named diseases to be known as dangerous, transmissible diseases (§ 585.15); (b) provide that when such diseases enumerated in Section 585.15 shall exist in the state, the Commissioner through the Division of Animal Industry,
"* * * may, or through its representatives and agents, dip, examine, test, identify, treat or destroy, any infected, exposed, suspected or susceptible animal and any goods, products or materials that may carry contagion, or may quarantine on or in, for or against any premises, areas, or localities within the state * *" (§ 585.16, F.S.)
and, (c) provide that the Commissioner is authorized to
"Condemn and destroy any domestic animals, or other animals affected with any contagious, infectious, or communicable disease, or which have been exposed to or are suspected of being liable to spread any contagious, infectious, or communicable disease." (§ 585.08(4))
Sections 585.09 and 585.10 provide that such condemnation and destruction of domestic animals shall take place only after a fair appraisal of their value which shall be determined by the Commissioner and the owner; provided if they are unable to agree, the value thereof shall be determined by three disinterested appraisers, one to be appointed by the Commissioner, one to be appointed by the owner, and the other by the first two appraisers. If the owner refuses to name his appraiser in five days or to permit his condemned domestic animal to be destroyed, the Commissioner may make an order directing the county sheriff to destroy such animal. The Department of Agriculture is authorized to indemnify and reimburse owners of all animals condemned and destroyed by order of the Commissioner in cases where such animals have reacted to the tuberculin test or the agglutination blood test for brucellosis (Bang's disease) provided, however, that such indemnity or reimbursement shall not exceed the sum of $12.50 for any one animal.
The defendant owners of cattle in Martin County successfully contended below that any statute, rule, regulation or program which requires them, when there is *327 no threatened or existing epidemic or emergency, to involuntarily send any noninfected animal or infected animal which is still useful and productive and which has a value other than a carcass value, to slaughter without first affording the owner a full and fair hearing is unconstitutional under Section 12 of the Declaration of Rights of the Florida Constitution, F.S.A., which provides "nor shall private property be taken without just compensation."
In holding F.S. Sections 585.09 and 585.10, F.S.A. invalid, the trial court relied upon the cases of Corneal v. State Plant Board (Fla. 1957), 95 So.2d 1, 70 A.L.R.2d 845, and State Plant Board v. Smith (Fla. 1959), 110 So.2d 401.
We do not believe these cases are apposite to the situation in the instant case and accordingly reverse for the reasons following:
We do not think slow spreading decline in citrus trees through the action of the burrowing nematode dealt with in the cases last cited above can be logically equated with the highly contagious communicable disease of brucellosis that infects both cattle and people. The compelling impact of the latter upon the public interest and community health is much more extensive, rapid and virulent than is spreading decline. Brucellosis affects the public health while such is not the case with spreading decline. Ordinarily, diseases affecting the health of persons or domestic animals are considered in law to be more malefic than diseases infesting or infecting plant life, and do not necessarily require a showing of their emergent or epidemic effects as a predicate compelling public interest for their summary eradication and control. The nature, control and treatment of brucellosis are discussed in Snapp and Neumann, Beef Cattle, 5th Ed., pages 619 and 620, as follows:
"Brucellosis may also be called Bang's disease, contagious abortion, or, simply, abortion. Abortion of the infectious type is one of the worst diseases with which cattle breeders have to contend. It is caused, as a rule, by a specific organism known as Brucella abortus, although other uterine infections of a more general character may likewise bring about a number of abortions in a herd of cows. Apparently infection generally gains access to a new victim through the mouth, having been scattered in the uterine discharge of an aborting animal over grass, hay, and other feed materials, or into the water source. All aborting cows should be segregated from the herd and kept in quarantine until at least 3 weeks after all uterine discharge has ceased, or until a negative blood test has been obtained. Some authorities hold that an infected cow is never rid of the organisms, although she may eventually become sufficiently immune to calve at the normal time. * * *
"There is no known cure for brucellosis. Immunization of heifer calves between 6 and 8 months of age with a standardized live vaccine, Brucella abortus strain 19, is a reasonably effective immunizing agent. In older animals, immunization may effectively prevent the disease but it interferes with blood agglutination tests, thus making later blood tests difficult to interpret. For this reason, older females are seldom vaccinated. Eradication of brucellosis is usually most successful if pursued on an area plan. Such eradication plans are operated under joint federal-state arrangements. States with less than 1 per cent incidence are called modified brucellosis-free areas. Individual herds which are tested annually by a state or federal veterinarian and found to be free of reactors in two successive years are designated as accredited herds. Federal and state regulations pertaining to the transportation of breeding cattle may vary from area to area and are subject to change, as are the various approved plans for eradication of the disease. Every breeder of beef cattle, *328 therefore, should keep abreast of the latest regulations in effect in his area.
"The handling of infected animals or the drinking of milk from infected cows can result in contraction of the disease by man, in which case it is called undulant fever. The disease is not often fatal to man but a long, debilitating illness results." (Emphasis in text.)
In Campoamor v. State Livestock Sanitary Board (1938), 136 Fla. 451, 182 So. 277, we said:
"Chapter 17273, Acts of 1935, authorizes the State Live Stock Sanitary Board to co-operate with the Federal Bureau of Animal Industry in the control of Bang's disease and to induce the owners of live stock to accept indemnity for animals found to be affected with any communicable disease for which they may have to be slaughtered. Under State regulation, the owner of cattle slaughtered gets from the State $12.50 for each cow and the value of the carcass. Under Federal regulation, if the animal slaughtered is an ordinary grade cow, he gets from the Federal Government $25.00 and if pure bred, he gets $50.
"We cannot bring ourselves to hold that such provision for compensation does not meet the requirement of due process in a situation like this. The value of an animal infected with Bang's disease is indeed problematical in view of the dire results that may flow from it. It is on this theory that summary destruction of diseased animals has been upheld and who knows that we may not be soon finding that the destruction of such animals may be enforced in the interest of the community." (At 279.)
In State Plant Board v. Smith, supra, we said:
"It is well settled, however, that the concept of due process does not necessarily require the granting of a hearing prior to the taking of official action in the exercise of the police power. Where a compelling public interest justifies the action, the Legislature may authorize summary action subject to later judicial review of the validity thereof. See Yakus v. United States, 1944, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834, often cited in cases involving `due process.' Thus, it has long been established that in the exercise of its police power the state may summarily seize or destroy diseased cattle, contaminated food, obscene publications, illicit intoxicants, narcotics, prohibited weapons, gambling devices and paraphernalia, and other property that menaces the public health, safety or morals. The seizure of such goods is justified because the danger exists that the property deemed malefic will be distributed to the public to its injury, or used for an illegal purpose, absent a seizure and pending a proceeding to determine the propriety of the seizure. Cf. Metallic Flowers v. City of New York, 1957, 4 A.D.2d 292, 164 N.Y.S.2d 227."
The Legislature in the statute referred to has found that brucellosis disease in domestic animals represents a dangerous subject of "compelling public interest" sufficient to justify making an exception to the fundamental rule of due process or just compensation to the extent of any overage in compensation benefits above $12.50 per domestic animal.
On the merits and contrary to the findings of the trial court, our assessment of the evidence in this case is that the Commissioner was clearly justified in inaugurating the program of brucellosis control in Martin County. We find nothing in the evidence which detracts from the legislative determination that there is a compelling public interest in the summary control and eradication of brucellosis disease in the cattle industry.
During the testing program in Martin County approximately 1202 cattle were diagnosed as being infected with brucellosis. Cattle on ranches contiguous to the *329 land of Appellees were also diagnosed as having brucellosis. The foregoing facts constituted more than a reasonable basis to suspect there might be animals infected with brucellosis among Appellees' cattle which they refused to present for testing pursuant to direction under the Commissioner's brucellosis program for the control and eradication of the disease in Martin County.
We can find no support for the trial court's contrary ruling in other jurisdictions. See Pennsylvania Dept. of Agriculture v. Hill (1954), 3 Dist. & Co.2d 302; Spillman v. Beauchamp (Ky. 1962), 362 S.W.2d 33, 2 A.L.R.3d 814; Ruona v. City of Billings, 136 Mont. 554, 323 P.2d 29; Coelho v. Truckell (1935), 9 Cal. App.2d 47, 48 P.2d 697; Affonso Bros. v. Brock (1939), 29 Cal. App.2d 26, 84 P.2d 515; State ex rel. Hale v. Lawson, 212 Ark. 233, 205 S.W.2d 204; State v. Splittgerber (1930), 119 Neb. 436, 229 N.W. 332; Loftus v. Department of Agriculture (1930), 211 Iowa 566, 232 N.W. 412, appeal dismissed 1931, 283 U.S. 809, 51 S.Ct. 647, 75 L.Ed. 1427; Strauel v. Peterson, 155 Neb. 448, 52 N.W.2d 307; State v. Schriber, 185 Or. 615, 205 P.2d 149. See also: 8 A.L.R. 67; 65 A.L.R. 525, 67 A.L.R. 208, and 70 A.L.R.2d 852; 3 C.J.S. Animals § 55, pgs. 1167, 1168, and 4 Am.Jur.2d Animals, § 35, pgs. 286-287.
The record indicates that the test and slaughter program for the eradication of brucellosis has been conducted throughout the nation according to rules and laws similar to Florida's.
The contention that an epidemic or emergency must always pre-exist before summary proceedings may be employed to eradicate infectious and contagious diseases appears to have no support in decisions throughout the country.
Dr. N.B. McCullough, one of the world's best qualified authorities on brucellosis, testified that discontinuance of the Martin County eradication program would increase the incidence of the disease in the County: "therefore, an increase in exposure to man * * * and it would be my opinion in relatively few years we would be back practically to where we were twenty years ago in terms of numbers of human cases."
There is no competent testimony in the record which indicates that the control of brucellosis is being accomplished through a vaccination program. Nor was there any conclusive evidence that healthy animals were being sent to slaughter. There was evidence that there is the possibility human errors might be made in the state tests for brucellosis, as in the case of any medical diagnostic test, but there is no evidence in the record of any healthy animal being improperly diagnosed as diseased and slaughtered.
The finding of the trial court that brucellosis has not appreciably increased in Martin County does not support the holding the existing statutes are invalid. To the contrary, the evidence shows that the state's test and slaughter program has dramatically reduced the incidence in the state of brucellosis in cattle and undulant fever in humans.
We do not find any unconstitutionality in Sections 585.09 and 585.10 as written, nor do we find them unconstitutional in their application to the facts appearing in the record. The subject legislatively treated here is peculiarly within the police power province of the Legislature. The program undertaken thereunder lies primarily within the competence of experts in the medical and veterinary fields. Absent a clear showing of invalidity of the enabling statutes or an arbitrary, unreasonable administration of the program, the courts will not interfere. No such showing has been made in this case.
We reiterate, the situation and the evil involved in these cases is vastly different from the subject dealt with in the spreading decline cases.
We reverse the final decree of the Circuit Court and remand the consolidated *330 cases with direction that further proceedings therein be in accordance with our opinion and judgment.
It is so ordered.
DREW and ADKINS, JJ., and SPECTOR, District Court Judge, concur.
ROBERTS, J., dissents with Opinion.
CALDWELL (Retired), J., dissents and agrees with ROBERTS, J.
ROBERTS, Justice (dissenting).
Absent an emergency situation, held not to exist here, precipitate destruction of reactors, without first having shown reactor a carrier of the contagion, is too drastic. Many vaccinated reactors are not carriers. Also compare Corneal v. State Plant Board, Fla., 95 So.2d 1, 70 A.L.R.2d 845.
CALDWELL (Retired), J., agrees.