THE PEOPLE OF THE STATE OF NEW YORK ex rel. HUGO C. SCHULZ, Appellant, *v.* R. ANDREW HAMILTON, Commissioner of Public Safety of the City of Rochester, N. Y., and GEORGE W. GOLER, Health Officer of the City of Rochester, N. Y., Respondents.

Fourth Department, July 1, 1919.

Municipal corporations — city of Rochester — public health — municipal ordinance not repealed by subsequent enactment of charter — authority of health officer or commissioner of public safety to require blood test of applicant for license to sell milk — provisions of charter construed.

The power of the State, in protection of the public health, to reasonably regulate any business having relation to the public health and to delegate to local authorities of the various political subdivisions of the State such power for convenience is well established.

The adoption of the charter of the city of Rochester (Laws of 1907, chap. 755) did not destroy a so-called health ordinance previously adopted providing for the licensing of dealers in milk.

Under the charter of the city of Rochester, neither the health officer nor the commissioner of public safety is entitled to require an applicant for a license to sell milk to submit to a blood test for the purpose of determining whether or not he had ever had typhoid fever or was a " carrier " of typhoid germs, in the absence of an enactment by the Legislature, or by the common council of the city.

The discretionary powers vested in the health officer and commissioner of public safety of said city by the charter to grant or withhold licenses relate only to the limited powers of said officers as defined in the charter and do not create in them a legislative discretion.

The power to enact a regulation for a blood test has not been and cannot be delegated.

APPEAL by the relator, Hugo C. Schulz, from an order of the Supreme Court, made at the Monroe Special Term and entered in the office of the clerk of the county of Monroe on the 20th day of December, 1916, denying his motion for a peremptory writ of mandamus.

*John F. Kinney,* for the appellant.

*B. B. Cunningham, Corporation Counsel,* for the respondents.

LAMBERT, J.:

The relator is a milk dealer, formerly licensed to sell milk in the city of Rochester. In 1916 he was refused a license for the reason that he declined to submit to a blood test for the purpose of determining whether or not he had ever had typhoid fever or was a " carrier " of typhoid germs. His application was made first to the health officer of the city of Rochester, and secondly, to the commissioner of public safety. His application conforms in all respects to the requirements of statute and was made upon forms furnished for that purpose. The refusal to grant the license upon that ground is the question presented.

The power of the State, in protection of the public health, reasonably to regulate any business having relation to the public health cannot be doubted. (*Fischer* v. *St. Louis,* 194 U. S. 361; *Jacobson* v. *Massachusetts,* 197 id. 11; *Matter of Viemeister,* 179 N. Y. 235.)

And the power of the State to delegate to local authorities of the various political subdivisions of the State such power for convenience is established by the same authorities.

By section 85 of the charter of the city of Rochester (Laws of 1907, chap. 755) there is expressly vested in the common council of the city the power to enact ordinances " for the preservation of good order, peace and health."

By sections 316 and 317 of the charter the commissioner of public safety is the head of the department of public safety, and, among other things, has cognizance, jurisdiction, supervision and control of the health bureau, with power to appoint a health officer.

By section 337 of the same act the health bureau is declared to be a part of the department of public safety and the chief officer thereof is made the health officer.

Thus, the local health officers are seen to be the commissioner of public safety, as head of the department of public safety, and under him, the health officer.

In 1904 the so-called " Health Ordinance " was adopted by the common council of the city of Rochester which, by section 8, provided for the licensing of dealers in milk. The adoption of the charter in 1907 did not destroy this ordinance for it is clearly within the saving clause provided by section 630 of that act.

By chapter 559 of the Laws of 1913 the Legislature amended the Public Health Law, providing for the creation of a Public Health Council, which in turn and by like authority adopted what is known as the Sanitary Code (Consol. Laws, chap. 45 [Laws of 1909, chap. 49], §§ 2a, 2b, 2c, as added by Laws of 1913, chap. 559). This Sanitary Code regulates in many particulars trafficking in milk and cream. By regulation 14 of chapter 3 thereof it is provided: " The health authorities of any municipality may in their discretion increase the stringency of these regulations or add to them in any way not inconsistent with the provisions thereof."

The sole statutory requirement for lawful trafficking in milk and cream in Rochester is the possession of a license issued by the health bureau of the department of public safety of the city.

It may be assumed that the regulation for blood test is not harsh or unreasonable, that its object is salutary and that either the Legislature or the common council, by appropriate enactments, could make such a provision applicable generally to milk dealers in Rochester. In fact, the appellant so expressly concedes and admits that if such an enactment did exist, by either the Legislature or the common council, then the relator would have no remedy.

But neither the Legislature nor the common council has so enacted. The regulation is one devised by either the health officer or the commissioner of public safety.

There seems to be express statutory prohibition against these officers so instituting general regulations.

Section 340 of the city charter deals with the powers of the commissioner relating to matters of health. It expressly confers upon the commissioner all the powers of a local board of health, limited only as in said section provided. The section then expressly says: "The power now or hereafter conferred by the laws of this State on the local boards of health to make and publish *general orders and regulations for* the preservation of life and health and the execution of the Public Health Law, must not be exercised by the commissioner, but *is vested in the common council*, to be exercised by ordinances adopted and with the fine, imprisonment and penalties as herein provided. The power to make special or individual orders and regulations for the suppression of nuisances and concerning other matters detrimental to public health, *not of general application*, now or hereafter conferred upon local boards of health, may be exercised by the commissioner of public safety in the manner now or hereafter provided by law."

That the regulation sought to be maintained for a blood test is one of general application cannot be doubted. In fact, it is so asserted by respondents. It is not made specially applicable to the relator alone. It is not aimed at suppression of a nuisance, nor to meet any emergency situation. There is no typhoid epidemic present or imminent. There is no special reason for believing that the relator either has had typhoid or is a carrier of typhoid germs.

This case seems, therefore, to fall squarely within the

provisions last above quoted and to require legislation by either the Legislature or the common council to make the same effective.

Quite evidently the scheme of all this legislation is to require the concerted action and judgment of more than one individual as a prerequisite to general regulatory measures, leaving in the commissioner and the health officer a discretion only in the manner of applying in detail these general regulations. The commissioner and the health officer are administrative officials. They have no power to legislate. They may determine facts and conditions which make applicable the general regulations and may even prescribe regulations for carrying into effect the general enactments of the appropriate legislative bodies. (*Village of Saratoga Springs* v. *Saratoga Gas, etc., Co.,* 191 N. Y. 123; *People ex rel. Moriarty* v. *Creelman,* 152 App. Div. 147; affd., 206 N. Y. 570.)

And I deem the discretionary power vested in these officers by section 104 of the city charter, to grant or withhold licenses, to relate only to the limited powers of those officers as above defined and not to create in them a legislative discretion.

However salutary and desirable this particular regulation may be, it cannot be given force and effect until the appropriate legislative body has enacted it in a lawful manner. That power so to enact has not been and could not be delegated.

These conclusions require a reversal of the order appealed from and an order directing issuance of the writ sought, with costs.

All concurred.

Order reversed, with costs, and motion granted, with fifty dollars costs and disbursements.