In the Matter of FRANCIS M. CONLON, on Behalf of Himself and All Others Similarly Situated, Petitioner, against JAMES MARSHALL et al., Constituting the Board of Education of the City of New York, et al., Respondents.

Supreme Court, Special Term, Kings County, July 5, 1945.

*John H. Conroy* and *Philip V. Manning* for petitioner.

*Ignatius M. Wilkinson, Corporation Counsel (Joseph G. De Vito* of counsel), for respondents.

SWEZEY, J. Petitioner seeks an order, pursuant to article 78 of the Civil Practice Act, to restrain the respondent members

of the Board of Education and the Department of Health of the City of New York from enforcing or attempting to enforce subdivision (a) of regulation 19 adopted under the authority of section 200 of the Sanitary Code by the Board of Health of the City of New York. This regulation requires teachers and other employees who work in the schools and come in contact with the children to procure biennially a certificate from a physician or from the Board of Health, based upon a chest X-ray examination, and certifying that such employee is free from active tuberculosis. The regulation reads:

" AT A MEETING OF THE BOARD OF HEALTH of the Department of Health held November 14, 1944, the following resolution was adopted:

" Resolved, That subdivision (a) of Regulation 19 of the ' Regulations Governing the Conduct and Maintenance of Schools in The City of New York,' and relating to Section 200 of the Sanitary Code of The City of New York, be and it is hereby amended to read as follows:

"(a) The board, officers, or other persons having charge, management or control of a school shall require biennially of all teachers and other employees who work in the school and come in contact with the children, commencing February 1, 1944, and for new appointees at time of appointment, a certificate from a physician, on a form furnished by the Department of Health, certifying such teacher or other employee to be free from active tuberculosis. The certificate shall be based on a chest X-ray provided by the physician or the Department of Health. When the X-ray is provided by a physician, such teacher or employee shall submit the X-ray, properly identified, and certificate on form furnished by the Department of Health of The City of New York to the school authorities not more than thirty (30) days after the taking thereof, for review by the Department of Health. In every case where the X-ray so submitted is not satisfactory, an X-ray of the chest of such teacher or employee shall submit the X-ray, properly identified, The school authorities shall place and keep on file the certificate of freedom from disease in communicable form but no such certificate shall be placed on file unless the X-ray has been made or reviewed by the Department of Health. Where the X-ray discloses a suspicious condition which cannot be properly evaluated on a single X-ray, such fact shall be endorsed on the certificate and the chest of such teacher or employee shall be further X-rayed, his sputum examined and such physical examinations by the Department of Health as may be indicated

made at such intervals as the said department may require."
(*The City Record,* Nov. 20, 1944, col. 2.) Pursuant to the fore-
going regulation the Board of Education of the City of New
York has directed the petitioner, a teacher in its employ, to
appear and submit to a chest X-ray examination or procure
such certificate from a physician for filing with the educational
authorities.

As a basis for the relief he seeks, petitioner contends that the
Board of Health was not empowered to enact such a regulation,
that the regulation in addition to being beyond the scope of
the board's powers is arbitrary, capricious and unreasonable
and is contrary to the Constitution and laws of the United
States and the Constitution and laws of the State of New York.
Petitioner contends further that this regulation denies equal
protection of the law to the persons directed to submit to such
examination and is discriminatory in that it is applicable to
no other person or group of persons who comes in contact with
children, or indeed, whose work places them in frequent contact
with persons who may be infected with the disease. Respond-
ents, on the other hand, contend that the regulation is a valid
and reasonable exercise of the powers vested by law in the
Board of Health to promulgate regulations for the security of
life and health in the city, and that it is not arbitrary, capricious
or discriminatory.

The questions to be decided therefore are, first, has the State
delegated the power to enact the regulation in question to the
Board of Health of the City of New York, and, second, is the
regulation arbitrary, capricious or unreasonable and contrary
to the Constitution and laws of the State of New York.

The New York State Constitution (art. XVII, § 3) specifically
states that the protection and promotion of the health of the
inhabitants of the State are matters of public concern and the
Legislature is charged with the duty of determining in what
manner and by what means provisions therefor shall be made.
It reads: " § 3. [*Public health.*] The protection and promotion
of the health of the inhabitants of the state are matters of
public concern and provision therefor shall be made by the
state and by such of its subdivisions and in such manner, and
by such means as the legislature shall from time to time
determine."

The Board of Health of the City of New York by reason of
the adoption of the New York City Charter (1938) was given
the power to alter, amend or annul any part of the Sanitary
Code and to publish additional provisions for the security

of life and health in the city of New York. Section 558 of the Charter reads: " b. The board of health is hereby authorized and empowered from time to time to, add to and to alter, amend or repeal any part of the sanitary code, and may therein publish additional provisions for the security of life and health in the city and confer additional powers on the department not inconsistent with the constitution or laws of this state or with this charter, and may provide for the enforcement of the sanitary code or any orders made by the commissioner or the board of health, by such fines, penalties, forfeitures and imprisonment as may be prescribed therein or otherwise by law. c. The board of health may embrace in the sanitary code all matters and subjects to which the power and authority of the department extends, not limiting their application to the subject of health only."

This delegation of power has been held by our courts to be a proper one. In the early case of *Polinsky* v. *People* (73 N. Y. 65, 69–70) the Court of Appeals stated: " That the Legislature in the exercise of its constitutional authority may lawfully confer on boards of health the power to enact sanitary ordinances, having the force of law within the districts over which their jurisdiction extends, is not an open question. This power has been repeatedly recognized and affirmed. (*Metropolitan Board of Health* v. *Heister*, 37 N. Y., 661; *Health Department* v. *Adam Knoll*, 70 id., 530; *The People ex rel. Cox* v. *The Justices of Sessions*, 7 Hun, 214.)"

In the more recent case of *People* v. *Blanchard* (288 N. Y. 145, 147) the court said: " Within limits that are to be measured by tradition, the State may commit to local governments the power to regulate local affairs. ' The legislature in these cases is not regarded as delegating its authority, because the regulating of such local affairs as are commonly left to local boards and officers is not understood to belong properly to the State.' (1 Cooley on Constitutional Limitations [8th ed.], p. 390.) On that basis, the main business of safeguarding the public health has always of necessity been done by local boards or officers through sanitary by-laws or ordinances which have been accorded the force of law. (*Metropolitan Board of Health* v. *Heister*, 37 N. Y. 661, 670; *Polinsky* v. *People*, 73 N. Y. 65.) Consequently the Sanitary Code is to be taken to be a body of administrative provisions sanctioned by a time-honored exception to the principle that there is to be no transfer of the authority of the Legislature."

From the foregoing it will be observed that there has been properly delegated the power to regulate the public health to the Board of Health of the City of New York within the limitations above stated.

There is no question but that the regulation in question is necessary for the protection of the public health of the people of the city of New York. Respondents' affidavits disclose that the contact between the teacher and school child, often intimate, greatly increases the hazard of infection if the teacher should be an open case of pulmonary tuberculosis. Respondents' affidavits also disclose that tuberculosis is not a disease that is readily apparent to the eye, nor is it easily recognizable on the basis of symptoms. It may exist for a long time without any outward manifestation in the victim. Under the circumstances the regulation is not arbitrary or capricious but rather a reasonable exercise of the power vested in the Board of Health to protect the public health.

Petitioner's further argument that the regulation is discriminatory and unconstitutional in that it applies only to school teachers and school employees is also untenable. There is no constitutional prohibition against class legislation as such if the classification is based upon some reasonable ground and it is not essentially arbitrary. (*People* v. *Beakes Dairy Co.*, 222 N. Y. 416.) In the more recent case of *Matter of Stracquadanio* v. *Dept. of Health* (285 N. Y. 93, 97) the Court of Appeals held that if the classification made by a Board of Health has a reasonable basis, it is a valid exercise of discretion. Having in mind the object and purpose of subdivision (a) of regulation 19, it cannot be said that the Board of Health acted unreasonably or arbitrarily in placing the school teacher and school employee in a different category from the policeman, the fireman, the motorman, the street cleaner or the clerk.

There remains for consideration the question whether or not this regulation invades the petitioner's constitutional rights and privileges. Where, as here, the choice must be made between the individual rights of the teacher, on the one hand, and the health of school children generally, on the other, I am of the opinion that the teacher's rights must yield to the common good. In this connection our courts have consistently held that the natural right to life, liberty and the pursuit of happiness is not an absolute one but that it must yield if the sacrifice is necessary in order that organized society as a whole is to be benefited. (*People ex rel. Nechamcus* v. *Warden, etc.*, 144 N. Y. 529, 535, 536; *Matter of Viemeister*, 179 N. Y.

235.) There the court said at page 238: " The police power, which belongs to every sovereign state, may be exerted by the legislature subject to the limitations of the Constitution, whenever the exercise thereof will promote the public health, safety or welfare. * * * When the sole object and general tendency of legislation is to promote the public health, there is no invasion of the Constitution, even if the enforcement of the law interferes to some extent with liberty or property."

The case of *People ex rel. Schulz* v. *Hamilton* (97 Misc. 437, revd. on another ground, 188 App. Div. 783) supports the view of this court. There the relator was a milk dealer who had theretofore had a license to sell milk in the city of Rochester, but was denied such license to sell milk in the city of Rochester for the year 1916 because he refused to submit to a blood test intended to show whether or not he had had typhoid fever or was a carrier of typhoid germs. There the regulation had not been enacted by the common council of the city but had been required by the health officer and on appeal to the Commissioner of Public Safety he determined that the health officer should issue licenses to those who submitted to the blood test. At Special Term the application for a writ of mandamus to compel the issuance of a license was denied.

In passing upon the application the court said in part at page 443: " The duty of the commissioner of public safety to foresee dangers to public health and to provide against them is quite as important, if not more so, than that of eradicating an epidemic after it has arisen."

And again at pages 446–447: " The requirement of a blood test of an applicant for a license is just a step and a small one in the direction of the protection of the public health, but every reasonable effort made in this direction should be encouraged so long as it does not unreasonably infringe upon the rights of the individual."

The Appellate Division (188 App. Div. 783) reversed on the ground that the health officer or the commissioner of public safety had no power to devise the regulation. In so doing LAMBERT, J., in writing for a unanimous court, said in part at page 786: " It may be assumed that the regulation for blood test is not harsh or unreasonable, that its object is salutary and that either the Legislature or the common council, by appropriate enactments, could make such a provision applicable generally to milk dealers in Rochester."

For the reasons stated above I am of the opinion that the Board of Health of the City of New York, was vested with the

power to adopt the regulation in question, and further that it is a necessary and reasonable measure to promote the public health. Petitioner's application is denied and the petition is dismissed.