James S. Brown, Jr., J.
In this action to declare unconstitutional certain enumerated sections of article 47 of the New York City Health Code and to restrain the enforcement thereof, the defendants move for an order pursuant to rule 112 of the Buies of Civil Practice and section 476 of the Civil Practice Act for judgment on the pleadings dismissing the amended complaint and on the further ground that it fails to state facts sufficient to constitute a cause of action.
Plaintiffs cross-move for like relief dismissing the amended answer on the ground that it is insufficient in law. Early Childhood Education Council of New York City and others, upon *561 application to this court, have been granted leave to appear as amicus curias in support of defendants’ motion.
The five sections of article 47 of the New York City Health Code dealing with the regulation of “ Day Care Services ” are claimed to be unconstitutional in that there is an assumption, usurpation and delegation of legislative functions by the Board of Health improperly establishing educational standards and requirements beyond the jurisdiction of the Board of Health; that they discriminate against schools and institutions rendering private day care services, and they are vague, illusory and do not define the standards sought to be imposed.
The specified sections of article 47, which are attacked, substantially are as follows:
1. Section 47.05 (subd. [a], par. [5]) which requires an applicant, seeking a permit to conduct a day care service, to furnish “ [e]vidence of a reasonably secure financial position to permit compliance with the provisions of this Code.”
2. Section 47.07 (subd. [a], par. [1]) which fixes a minimum age of two years for a child to be admitted to a day care service.
3. Section 47.09 (subds. [a], [b], [d], [e]) which requires a professional staff of teachers either licensed by the City Board of Education as a teacher in early childhood education or certified by the State Education Department as a teacher in the field of early childhood education with certain other qualifications.
4. Section 47.11 (subds. [a], [b], [d]) which requires teachers and assistants to be provided for different groups of children according to their age, i.e., commencing with two years and under six years.
5. Section 47.13 (subds. [a], [b]) which requires a minimum floor area of 30 square feet for each child.
Specifically, plaintiffs charge that section 47.05 (subd. [a], par. [5]) requiring the production of financial records and section 47.07 (subd. [a], par. [1]) fixing a minimum age, and section 47.13 (subds. [a], [b]) requiring a minimum square footage for each child have no relation to the purposes and function of the Board of Health nor the health and welfare of children within the City of New York and that section 47.09 (subds. [a], [b], [dj, [e]) and section 47.11 (subds. [a], [b], [d]) setting forth the qualifications prescribed for the teachers and staff and the conditions of supervision are not within the purview or powers of the Board of Health and are a usurpation of the powers and functions of the Municipal and State Education Departments.
*562 The attacked sections stem from a complete revision of the former Sanitary Code, which the Board of Health found no longer kept pace with a health and welfare philosophy capable of reflecting the changing times and modes of city living. Accordingly, in order to properly fulfill its duties for the preservation of life, care and promotion of the public health of the City of New York, the Board of Health found that there was a need to revise the former Sanitary Code in existence since 1914 and bring into being a new Health Code.
With such objective in mind, a contract was entered into between the City of New York and the trustees of Columbia University, delegating to them the study and compilation of the new code. After a period of three and one-half years, the present New York City Health Code was drafted as an annotated code with introductory notes, each section followed by the revisor’s notes, containing the derivation of the section and other pertinent references.
The new code was enacted by the Board of Health pursuant to the authority and power vested in it by section 558 of the New York City Charter, which in substance provides that the Health Code in effect at the time the charter became effective shall continue to be binding and in force and shall have the force and effect of law; and authorizes the Board of Health to add, alter, amend or repeal any■ part of the Health Code relating to the security of life and health, and states that the power of the board is not limited to matters of health alone but extends to all matters and subjects to which the power and authority of the department extend.
Plaintiffs allege that prior to the enactment of the new Health Code they rendered child care and educational services and enrolled more children than now permitted; that they had not been compelled to hire instructors and teachers with the qualifications prescribed by article 47 and had not been required to meet the financial standards therein contained. Accordingly, they state that they have been forced to submit to the new rigid requirements with resultant losses of income and that if they had refused to comply, the right to conduct their schools would have been barred, thereby depriving them of property rights of great, value, the loss or impairment of which would have resulted in irreparable loss and damage.
The article and sections attacked deal with the police power of the State through its municipality, the City of New York. This is one of its broadest powers and its exercise is limited only by the requirement that there be a reasonable relationship *563 to the public health or welfare and that it not be exercised arbitrarily.
There is a strong presumption of constitutionality attached to a legislative enactment and it is presumed to be supported by facts known to the legislative body. (Wiggins v. Town of Somers, 4 N Y 2d 215; Spielvogel v. Ford, 1 N Y 2d 558, 563; Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537.) This presumption is of course rebuttable, but he who would rebut must show that there is no permissible interpretation of all the facts which justify the imposition of such police powers. (Matter of Wulfsohn v. Burden, 241 N. Y. 288, 297; Harman v. Board of Educ. of City of N. Y., 300 N. Y. 21, 31.)
The plaintiffs ’ attack on the constitutionality of the code, the article and the sections, on the ground that they are inconsistent with the laws of the State of New York and encroach upon the powers and functions of the State Education Department, is groundless and apparently predicated upon a misconstruction of Matter of Kress Co. v. Department of Health (283 N. Y. 55) and the effect of the regulations relating to the “Voluntary Registration of Nonpublic Nursery Schools and Kindergartens ” issued by the State Department of Education. In the Kress case the court in setting forth the principle of law relating to the powers of a local municipality to enact legislation and health regulations where the State has its own statute or regulations stated (p. 59): “ The state having covered the whole field, the city may not make regulations of its own, inconsistent with the laws of the State Applying this doctrine to the situation at hand we find that the regulations issued by the State Department of Education, and as the title signifies, establish a voluntary procedure to be adopted by nonpublic nursery schools and kindergartens, if they desire a registration certificate. They do not prevent or bar any individual or association from maintaining a nursery and kindergarten school where they do not wish to comply with the restrictions therein contained. Under the circumstances the operators of such schools not being under compulsion to operate their schools with the high standards prescribed by the State regulations could maintain them with a minimum and the barest of health standards and qualifications of its teaching staff unless a municipality or local government stepped into the breach.
The Health Code as enacted accordingly does not conflict, encroach upon or abrogate the regulations of the State Board of Education, but rather runs parallel and leads to an enforcement of them.
*564 The regulations promulgated by the State Board of Education take cognizance of the existence of the New York City Health Code and the enforcement thereof by waiving the production of certain documents if application is made to it. In any event it would appear that under the State Welfare Law the operation and management of day nurseries and day care centers for children in the City of New York are relegated to the municipal authority and placed under their supervision and control (see Social Welfare Law, § 390).
It cannot be disputed that the Board of Health of the City of New York in the performance of its statutory duty to protect and promote the public health within the City of New York is authorized to promulgate rules and regulations as a means to accomplish that end. Section 558 of the New York City Charter endows the Board of Health with a broad discretion in the selection of measures by which public health may be protected within the field of its jurisdiction. (Matter of Stracquadanio v. Department of Health, 285 N. Y. 93.) Such local law and its regulations are not in contravention to the Sanitary Code and Public Health Law of the State of New York since the Health Code of the City of New York has the force and effect of State law within the city’s boundaries. (Matter of Bakers Mut. Ins. Co. [Dept. of Health], 301 N. Y. 21.)
Throughout our system of State and local government relating to the protection of .the health and welfare of the inhabitants of this State, there has always existed a demarcation between the State and the City of New York with respect to such protection. This distinction is aptly set forth in Metallic Flowers v. City of New York (4 A D 2d 292, 297, mod. on other grounds 5 N Y 2d 246), where the court stated: “Historically, a distinction has existed as to law and,procedure in matters of health and education, between the City of New York and the rest of the State. The statutory scheme provided for the City of New York clearly indicates the difference. The Sanitary Code was designed to have the force and effect of State law within the City of New York, while elsewhere in the State the Public Health Law and the applicable provisions of the Education Law which derive directly from its control. (Cartwright v. City of Cohoes, 39 App. Div. 69, affd. 165 N. Y. 631; Matter of Bakers Mut. Ins. Co. [Dept. of Health], 301 N. Y. 21; People v. Blanchard, 288 N. Y. 145; Matter of Investigation, County of Kings, 286 App. Div. 270, motion for leave to appeal denied 309 N. Y. 1031.) While the New York City Charter (§ 558) provides that this power of the Health Department must be exercised in a manner not inconsistent with the State statutes, it does not bar local *565 code provisions that are additional to the State enactments. (Matter of Kress & Co. v. Department of Health, 283 N. Y. 55, 59.) The State has not completely pre-empted the field and the code provisions are therefore a valid exercise of power (People v. Lewis, 295 N. Y. 42; People v. Sampsell, 248 N. Y. 157; People v. Klufas, 2 A D 2d 958).”
When the over-all purpose of article 47 of the Health Code is examined one finds that the Board of Health has not encroached upon the powers of the State Education Department and City Board of Education by requiring teachers qualified in early childhood education to care for these children in the age brackets of two to six years. The physical and psychological needs of the children cannot be separated, particularly where both the State Education Department and City Board of Education have not completely assumed control and jurisdiction affecting children within the age limits prescribed.
The purpose of the enactment of articles 45 and 47 of the Health Code was to embody therein the most modern concepts and policies of health practice in nursery schools and kindergartens designed to protect and promote the physical as well as the psychological needs of children. This is clearly evidenced by the publications issued by the United States Department of Health, Education and Welfare in the article entitled, “ Your Child from 1 to 6 ” and the Rules of the State Board of Social Welfare relating to “ Day Care of Children in New York State ” as well as the regulations issued by the State Department of Education in the voluntary registration of nonpublic nursery schools and kindergartens. In these pamphlets, as well as the State regulations, the educational qualifications of the teachers, directors and supervisors as well as the physical plant and space allocated to the number of children and financial means of upkeep are set forth as essential requirements for such schools and kindergartens. The Board of Health having authority to regulate with respect to the health, safety, welfare and care of the children within the City of New York, should not be barred from promulgating for them provisions which are at least equal to those made for children outside the City of New York.
In fact, the Rules of the State Board of Social Welfare on the day care of children were considered in the preparation of article 47 as have the requirements of the State Education Department for voluntary registration of nonpublic nursery schools. (See Introductory Notes, art. 47.)
It is thus apparent that the Board of Health in adopting article 47 providing therein standards for qualified teachers in early childhood training and education to care for children *566 neither encroached upon the powers and functions of the State or City Education Departments nor created any conflict with the Regulations of the State Education Department for voluntary registration of nonpublic nursery schools.
Section 47.13 does not deal with the construction of buildings nor with restrictions of the use of the buildings but rather with adequate facilities to render day care services to children of tender years in order to protect their physical and psychological needs in accordance with modern day concepts of public health. The provisions of the disputed article are not violative or repugnant to the State or Federal Constitutions and clearly come within the ambit and scope of police powers to protect and promote the health, safety and welfare of children even though said provisions may in some respects interfere with the plaintiffs’ individual freedom in maintaining and operating their day care service enterprises as they see fit. The applicable rules of law are well known in reference to the constitutionality of statutes. As the court stated in Defiance Milk Prods. Co. v. Du Mond (309 N. Y. 537, 540-541, supra): “ Every legislative enactment carries a strong presumption of constitutionality including a rebuttable presumption of the existence of necessary factual support for its provisions (Borden’s Co. v. Baldwin, 293 U. S. 194, 209, 210). If any state of facts, known or to be assumed, justify the law, the court’s power of inquiry ends (United States v. Carolene Products Co., 304 U. S. 144, 154). Questions as to wisdom, need or appropriateness are for the Legislature (Olsen v. Nebraska, 313 U. S. 236, 246). Courts strike down statutes only as a last resort (Matter of Ahern v. South Buffalo Ry. Co., 303 N. Y. 545, 555, affd. 344 U. S. 367) and only when unconstitutionality is shown beyond a reasonable doubt (Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 79; Matter of Fay, 291 N. Y. 198, 206, 207).” (See, also, Matter of Spielvogel v. Ford, 1 N Y 2d 558, supra.)
It is axiomatic that a statute or ordinance enacted to promote public health and welfare is valid under the police powers of the State or local government even though in some respects it may interfere with individual freedom, unless it is wholly arbitrary and unreasonable. Individual freedom under such circumstances must yield, to the public good (People ex rel. Armstrong v. Warden, 183 N. Y. 223; City of Rochester v. Macauley-Fien Milling Co., 199 N. Y. 207), and the mere fact that the enactment of a statute results in reduced income and inflicts other pecuniary injury does not establish a denial of constitutional due process or equal protection under the law. (Turner Nurses Agency v. State of New York, 17 Misc 2d 273.)
*567 The plaintiffs have completely failed to establish that the article under attack and its sections unjustly discriminate against schools and institutions rendering private day care and deny to them the equal protection of the laws in violation of the State and Federal Constitutions. An examination of sections 47.01 and 47.03 clearly discloses that the regulations are not confined or enforcible only against private institutions. The language of the respective sections specifically embraces nursery schools or kindergartens conducted by the Board of Education or by established religious organizations, although as to those groups a permit is not required. (See Revisor’s Introductory Notes relating to art. 47.) Even if the regulations applied only to privately operated nursery schools and kindergartens, they would not infringe upon or emasculate the equal protection clause, as such regulations are applicable to all privately owned nursery schools and kindergartens and all are treated alike.
In an analogous situation affecting private proprietary hospitals, where similar objections were raised, the court in Matter of Engelsher v. Jacobs (5 N Y 2d 370, 374, cert. den. 360 U. S. 902) stated: “ Equal protection is accomplished when all of the same class: are treated in like manner * 8 ®. That one class is treated differently than other classes can give rise to no complaint under the equal protection clause.’’’ The further objection that the plaintiffs conducted their schools and nurseries in compliance with the old,, superseded Sanitary Code and that the new code imposes additional financial burdens upon them resulting in pecuniary loss, thus making the regulations unconstitutional, was also disposed of by the same court, which stated (p. 375): “ It is clearly settled that ‘ in no case does the owner of property acquire immunity against the exercises of the police power because he constructed it in full compliance with existing laws.’ ” (See, also, Patsone v. Pennsylvania, 232 U. S. 138;, Williamson v. Lee Optical Co., 348 U. S. 483.) Nor is there merit to plaintiffs’ contention that section 47.05 (subd. [a], par. [5]) of the code is defective as it fails to define the term “ financial position.” The requirement of “ Evidence of a reasonably secure financial position to permit compliance with the provisions of this Code ”, as set forth in paragraph (5) of subdivision (a.) of section 47.05 is clear on its face and requires no definition. We are bound, in interpreting a statute, to construe it in accordance with the sense of its terms and the intention of the framers, of the law. If the language is unambiguous, the words plain and clear, conveying a distinct idea, there, is no> occasion to resort to other means of interpretation or to rules of construction (New Amsterdam Cas. Co. v. Stecker, *568 3 N Y 2d 1; Town of Putnam Val. v. Slutzky, 283 N. Y. 334). To meet the code’s requirements, all the applicant need show is that he can meet the requirements of supplying the necessary physical facilities, staff, clothing, equipment and is equipped to furnish nourishing food and transportation in accordance with the scope of the services sought to be conducted.
The plaintiffs have failed to establish that the regulations and code are arbitrary, discriminatory or unreasonable. There can be no doubt that they are calculated to protect the health and welfare of the children of our city in accordance with modern concepts and policies of public health practice.
Accordingly, the defendants’ motion for judgment is granted and plaintiffs’ cross motion is denied.