Joseph A. Brust, J.
In this action wherein plaintiffs, as taxpayers, seek to enjoin pendente lite and permanently, the proposed program for the fluoridation of the municipal water supply of New York City, there are two applications before this court, (1) plaintiffs’ application for a temporary injunction, and (2) defendants’ cross motion for an order dismissing the complaint.
Plaintiffs assert numerous causes which may be placed into two main categories. They assert that there were procedural defects in the manner in which the fluoridation program was adopted; specifically concerning the manner of appropriating moneys for the implementation of the program and the alleged failure to comply with State law which requires, in plaintiffs’ view, a local law before fluoridation can be adopted by the city. The second category concerns, primarily, constitutionally based objections to the program, and assertions that in the present posture of scientific knowledge in this area, fluoridation would be not only improper but unconstitutional.
The complaint sets forth three causes of action and in the second cause, which this court will consider first, plaintiffs allege that the city may not lawfully expend funds for the proposed project because no local law has been passed authorizing such action.
The fluoridation program proposed for this city was formally authorized by a new section 141.08 of the New York City Health Code enacted by the New York City Board of Health on April 7, 1964, which provides as follows:
*720 “ § 141.08 Fluoridation of public water supply. The public water supply of the city of New York shall be fluoridated in the following manner:
“A fluoride compound shall be added which will provide in such water supply a concentration of approximately 1.0 part per million of the fluoride ion, provided, however, that the concentration of such ion shall not exceed 1.5 parts per million.” This amendment was filed with the City Clerk of the City of New York on April 7,1964 and took effect on that date in accordance with the provisions of section 558 of the New York City Charter.
The authority of the Board of Health to act in this general area is derived from sections 556 to 558 of the New York City Charter. Subdivision a of section 558 provides that the New York City Health Code “ shall have the force and effect of law.”
While the New York City Sanitary Code (the predecessor of the present City Health Code, which superseded the Sanitary Code as of Oct. 1, 1959) was in effect, it was repeatedly declared that the Sanitary Code and amendments thereto, had the force of State law. (Matter of Bakers Mut. Ins. Co. [Dept, of Health], 301 N. Y. 21, 27 [1950].) In Matter of Bakers Mut. Ins. Co. in which the validity of an amendment to the New York City Sanitary 'Code was sustained, the Court of Appeals declared (p. 27): “The intent of the Legislature in providing for such a statutory scheme seems to us to have been simply this: The Sanitary 'Code of the City of New York is to have within that city the force and effect of State law while elsewhere in tire State the [State] Sanitary Code and the Public Health Law of the State are to be supreme (cf. People v. Blanchard, 288 N. Y. 145).” In Metropolitan Assn, of Private Day Schools v. Baumgartner (41 Misc 2d 560, 564), the court affirmed the same proposition as to the New York City Health Code, stating: “ the Health Code of the City of New York has the force and effect of State laAV within the city’s boundaries. (Matter of Bakers Mut. Ins. Co. [Dept, of Health], 301 N. Y. 21.) ”
Subdivision b of section 558 authorizes the Board of Health to add to, alter, or amend any part of the Health Code and to publish additional provisions 1 ‘ for the security of life and health in the city ’ ’, and subdivision a of section 556 empoAvers the Health Department to ‘ ‘ regulate all matters affecting health in the city ’ ’.
The poAver of the board to enact provisions for the furtherance and protection of health has long been established as a constitutional exercise of poAver (Metropolitan Bd. of Health v. Heister, *721 37 N. Y. 661; People v. Blanchard, 288 N. Y. 145; Matter of Conlon v. Marshall, 185 Misc. 638 [Supreme Ct, Kings County, 1945], affd. without opn. 271 App. Div. 972 [2d Dept., 1947]; Quaker Oats Co. v. City of New York, 295 N. Y. 527, 538 — 539 [1946], affd. sub nom. Hill Packing Co. v. City of New York, 331 U. S. 787).
Section 3 of article XVII of the State Constitution, effective January 1, 1939, provides: 1 ‘ The protection and promotion of the health of the inhabitants of the state are matters of public concern and provision therefor shall be made by the state and by such of its subdivisions and in such manner, and by such means as the legislature shall from time to time determine.” Concerning this provision, it is stated in the Revised Record, of the 1938 Constitutional Convention, at page 2133, that it was to validate the police power as then ‘ ‘ practiced in the State of New York ” and, when applied to public health, such police power is not merely the power to restrain and regulate the use of property, but is rather “ a constructive program for the promotion of positive health”.
In addition, the New York City Charter Revision Commission Report, dated August 17, 1936, indicates that the charter, effective January 1, 1938, is intended to confer “extraordinary” and ‘ ‘ plenary ’ ’ powers of legislators for the protection of health upon the Board of Health, and the report further states at page 38: “ The Board of Health exercises extraordinary police powers affecting the health of the City. By its power to adopt a Sanitary Code the Board has plenary powers of legislation.”
In Matter of Stracquadanio v. Department of Health (285 N. Y. 93, 97) the court stated: “ Clearly section 558 of the New York City Charter endows the Board of Health with a broad discretion in the selection of measures hy which public health may be protected within the field of its jurisdiction.” And, further, in People v. Blanchard (288 N. Y. 145,147): “ The main business of safeguarding the public health has always of necessity been done by local boards or officers through sanitary bylaws or ordinances which have been accorded the force of law. (Metropolitan Board of Health v. Heister, 37 N. Y. 661, 670; Polinsky v. People, 73 N. Y. 65.) ”
Regardless of its validity, the fluoridation program is obviously directed towards the ‘1 security of the life and health ’ ’ of the citizens of New York City, and is an attempt to cope with the serious and growing public health problem of tooth decay and dental neglect, particularly among children. To hold otherwise would require a finding that fluoridation, regardless of its merits, is a measure which has no direct bearing on a public *722 health problem. Adopting plaintiffs’ substantive arguments at face value arguendo, the most that could be said is that there is a strong difference of opinion as to the value of fluoridation and that it may not be the best means of attacking the problem of tooth decay and dental neglect. However the problem still remains fundamentally one of health and is therefore within the jurisdiction of the New York City Department of Health.
This court finds that the afore-mentioned new section 141.08 -of the New York City Health Code offends no public policy of this State, contravenes no prevailing State statute or municipal ordinance and is not in excess of the Health Department’s power (see Grossman v. Baumgartner, 40 Misc 2d 221, revd. 22 A D 2d 100). Accordingly, the second cause of action is legally insufficient and must fall.
The first cause of action is based on an attack upon the procedures used, and to be used to appropriate moneys for the implementation of the fluoridation program. After public hearings duly held by the Board of Estimate of the City of New York and the Finance Committee of the Council of the City of New York, a proposal was adopted by the Council modifying the expense budget for 1963-1964 and authorizing the expenditures of funds from the expense budget for the acquisition and installation of the necessary equipment and facilities.
Plaintiffs assert that this was illegal, claiming that the proper method of appropriating funds for this program should have been by an amendment to the city’s capital budget, and that the city is without power to use expense budget moneys for this particular purpose unless the capital budget is amended.
It appears that the fluoridation equipment will be installed in existing city structures and that about 90% of the appropriated sum, exclusive of engineering costs, will be expended for acquisition and installation of equipment. A project need not be handled through the capital budget and capital budget appropriation if it is intended that the costs of the project be met wholly out of the expense budget appropriation and not by any city borrowing. The-entire history of the capital budget provisions of the City Charter, as they were amended from time to time, establishes beyond doubt, that the capital budget, as an appropriation document, is concerned solely with capital improvements provided by the device of borrowing and pledging the credit of the city, with the power in the Mayor of the City of New York to extend the limit of such borrowing by not more than 15% above the sum appropriated in the capital budget.
Section 225 of the City Charter provides: “No obligations of the city shall be issued or authorized for or on account of any *723 capital project not included in a capital budget, or in excess of the maximum amount of obligations which may be issued on account of a project as fixed in such capital budget; and no amount may be expended on account of any capital project in excess of the amount appropriated therefor in a capital budget, except that the amount appropriated therefor may be increased by the mayor by not more than fifteen per centum thereof in order to meet any costs required to advance such project.”
What is prohibited by the charter is the issuance of any evidence or certificate of obligation by a city borrowing moneys to provide for a capital project unless such borrowing is provided by a capital budget appropriation. There has been no allegation by plaintiffs or proof that any bonds or other obligations of the city will be issued to obtain funds to finance the program herein. While allowance of capital expenditures through the device of inclusion in the expense budget may afford a method of circumvention of the procedures surrounding capital budget appropriations, this procedure is legally permissible and there is no basis presented for judicial interference in this area.
Accordingly, the first cause of action is legally insufficient and must also fall.
The third cause of action is based on plaintiffs’ allegations and contentions (a) that other methods of reducing tooth decay are available; (b) that fluoridation is discriminatory in that it allegedly benefits children only; (e) that fluoridation unlawfully imposes medication on plaintiffs against their will; and finally, (d) that fluoridation “is or may be” dangerous to health. Plaintiffs also contend, in an affidavit submitted herein by a nonparty, that the religious freedom of certain groups in the community will be unconstitutionally impaired by fluoridation. However, no such allegation is set forth in the complaint and, accordingly, this issue is not properly before this court at this time. This court may only concern itself with the issues raised by the pleadings.*
Plaintiffs allege, in effect, on the basis of these contentions, that the city’s fluoridation program violates the privileges and immunities clause of the Fourteenth Amendment to the Federal *724 Constitution and also the New York State Constitution (art. I, § 1), the equal protection clauses of both Constitutions, and the due process clause of the Fourteenth Amendment-to the United States Constitution. Finally, plaintiffs also claim that the city’s fluoridation program violates the New York City Public Health Law in that the city allegedly lacks the power to add any substance to its water supplies which is not relaited to prevention of water-borne disease or maintenance of the purity and potability of such water supplies.
Both parties hereto have submitted a mass of documentary evidence attesting to the point of view advanced by each as to the beneficial or possibly detrimental nature of fluoridation. In the face of this mass of evidence, this court will deem the defendants’ cross motion as one for dismissal on the merits before answer, in the nature of summary judgment, pursuant to OPiLR 3211 (subd. [c]).
It has already been noted that the Board of Health has the power to, and did, act in legislative capacity under State legislative authority. It is not disputed that the matter of tooth decay and dental neglect among 500,000 of the city’s children presents a growing public health problem. Public hearings were held on November 18 and 19, 1963, by the New York City Board of Estimate and the Finance Committee of the City Council on the proposal to appropriate the funds required for the acquisition and installation of the necessary fluoridation equipment and facilities. The testimony and proofs 'taken at those hearings, comprising a record of approximately 900 pages, are before the court. The testimony is summarized in affidavits submitted to the court by highly qualified experts, researchers and engineers. The record discloses that 48,000,000 people in the United States and Canada have been consuming municipally fluoridated water for years without any substantial evidence of harm to health and that 7,000,000 additional people in this country have, for generations, consumed naturally fluoridated waters with a content similar to, or greater than, the one-part-per-million level contemplated for New York City, also without any verified harm to health.
Fluoridation as a public health practice has been exercised in the United States for almost 20 years. It is not disputed that dental caries affect a substantial percentage of our population, particularly the more disadvantaged who are not disposed or able to undertake programs of proper dental care. It is also clear that fluoridation is effective in combatting dental caries among the young, and its effects last through adulthood. Fluoridation of the water supply is also the most efficacious, *725 probably the cheapest, and may be the only practical method of insuring the administration of this drug to the very young.
Plaintiffs assert that other means are available whereby fluorides may be provided for those desirous of using them. But the question before this court is solely whether the means proposed herein are lawful. The existence of other possible remedies is not relevant (Jacobson v. Massachusetts, 197 U. S. 11; United States v. Carolene Prods. Co., 304 U. S. 144). In the Jacobson ease (p. 35) it was stated: “ Since * * * vaccination, as a means of protecting a community against smallpox, finds strong support in the experience of this and other countries, no court, much less a jury, is justified in disregarding the action of the legislature simply because in its or their opinion that particular method was — perhaps or possibly — not the best either for children or adults ”.
As to plaintiffs’ claim that fluoridation is discriminatory for it benefits children only, all that need be said is, that in the usual course, children become adults and that fluoridation will, commencing with the date of its adoption, ultimately affect all.
Plaintiffs lay special emphasis upon “individual liberty” and the compulsive aspect of municipal fluoridation in shrinking this area. In support of this, plaintiffs quote from Jacobson v. Massachusetts (p. 29), wherein the Supreme Court held constitutional a regulation requiring vaccination, as follows: ‘£ There is, of course, a sphere within which the individual may assert the supremacy of his own will and rightfully dispute the authority of any human government, especially of any free government existing under a written constitution, to interfere with the exercise of that will.” However, this court also stated: “But it is equally true that in every well-ordered society, charged with the duty of conserving the safety of its members the rights of the individual in respect to his liberty may at times, under the pressure of great dangers, be subjected to such restraint, to be enforced by reasonable regulations, as the safety of the general public may demand.”
The Court of Appeals of this State similarly upheld the propriety and constitutionality of a vaccination statute (Matter of Viemeister, 179 N. Y. 235-, 238), stating: “When the sole object and general tendency of legislation is to promote the public health, there is no invasion of the Constitution, even if the enforcement of the law interferes to some extent with liberty or property.”
It is true that the issues presented in the afore-mentioned Jacobson and Viemeister cases involved communicable infectious diseases and did not involve a disease such as dental caries, *726 which admittedly is not a communicable infectious disease. At the worst, if unchecked, dental caries can cause a degeneration of the physical condition of the individual, but its effect upon society generally is, at its best, quite indirect. Nor do those cases which upheld the chlorination of municipal water supplies afford a compelling precedent. The addition of chlorine is effected to remove existing or threatened impurities in a water supply and to meet the obligation of the supplier, often imposed by statute, to supply pure water to its citizens. The addition of fluorides would serve a far different purpose — one completely unrelated to the purity of the water supply, and not aimed at combatting a threat to health posed by the State of the water supply prior to the addition of fluorides.
Defendants contend that ‘ ‘ The judicial function is exhausted with the discovery that the relation between means and end is not wholly vain and fanciful, an illusory pretense ” (Williams v. Mayor, 289 U. S. 36, 42) and that “ It is not for the courts to determine which scientific view is correct in ruling upon whether the police power has been properly exercised ” (Chiropractic Assn, of N. Y. v. Hilleboe, 12 N Y 2d 109, 114). The nonfhioridation cases heretofore cited all involved communicable diseases or the regulation or use of equipment which was dangerous to the public generally and, for the reasons above noted, are inapposite. As far as this court can determine, the highest courts of our State and of the United States have not yet decided whether a State, in the proper exercise of the police power, can force individuals to take medication in these noncontagious diseases which are not extremely debilitating to the individual concerned and which can be prevented by other readily available and inexpensive means. Some have argued that in so doing, the government is confusing expediency with obligation, and stepping out of a role of protector of the individual’s rights, to one as arbiter of them. They assert that if this right of the State is upheld, it may equally interdict the use of tobacco, alcohol or rich foods, and introduce into the water supply aspirin to prevent headaches, or any other drug that may be developed in the future to prevent any type of disease, such as allergies, etc. It should be here noted that if the condition attacked were in the nature of an “ adult” disease, rather than, as in the instant case, one where the treatment, to be efficacious, must be given to the very young, different considerations would be present. However, the health of our children is a legitimate area of public and governmental concern, whether under the police power of the State, or in the exercise of the State’s power to protect the general welfare. It is not shocking to realise that the State, *727 acting in the interest of children, too young to be sui juris, may intervene in the parental area.
This question has been presented to the highest courts of several other States and it has been universally held that fluoridation does not unconstitutionally invade the rights of the citizens. (See DeAryan v. Butter, 119 Cal. App. 2d 674, cert. den. 347 U. S. 1012; Chapman v. City of Shreveport, 225 La. 859, app. dsmd. 348 U. S. 892 ; Kraus v. City of Cleveland, 163 Ohio St. 559, app. dsmd. 351 U. S. 935; Dowell v. City of Tulsa, 273 P. 2d 859 [Okla.], cert. den. 348 U. S. 912; Kaul v. City of Chehalis, 45 Wn. 2d 616; Birnel v. Town of Fircrest, 53 Wn. 2d 830; Froncek v. City of Milwaukee, 269 Wis. 276, supra; Baer v. City of Bend, 206 Ore. 22, supra; City Comm, of City of Ft. Pierce v. State, 143 So. 2d 879 [Fla.]; Wilson v. City of Council Bluffs, 253 la. 162; Readey v. St. Louis County Water Co., 352 S. W. 2d 622 [Mo.].)
In only two cases have the courts voiced even qualified objections to the constitutionality of fluoridation. (See McGurren v. City of Fargo, 66 N. W. 2d 207 [N. D.]; Teeter v. Municipal City of LaPorte, 236 Ind. 146.) In the latter case, the appellate court based its overruling of the sustaining of defendant’s demurrer on the ground that “ under the present state of scientific experience and opinion we do not feel we are in a position to hold conclusively as a matter of law fluoridation will not have cumulative toxic effects ” (p. 151). However, see Ferguson v. Skrupa (372 U. S. 726) indicating that, in the field of health matters, ‘ ‘ What is harmful or injurious is a matter for the Legislature rather than the courts ”. (Grossman v.
Baumgartner, 22 A D 2d 100, 101.) In the McGurren case (supra) the court held that it would not be unreasonable to find that fluoridation violated an implied contract between the city and its inhabitants that the city would furnish only pure water. Accordingly, except for the two last-cited cases, the approach of the courts has been to uphold fluoridation if it could be found that fluoridation was a reasonable method of preventing a widespread detrimental health condition which the executive or legislative branches of the government believed desirable to treat. In effect, the courts have therefore generally held that their review of fluoridation measures is subject to the same limitations as to scope that exist in the customery review of administrative actions. It should also be noted at this point that the United States Supreme Court has either dismissed appeals or denied certiorari in cases which squarely presented as the primary or sole question for review the constitutionality of fluoridation of a water supply. In the following cases, the *728 appeals were dismissed for want of substantial Federal question: Chapman v. City of Shreveport (supra); Birnel v. Town of Fircrest (supra); in the following cases, certiorari was denied: De Aryan v. Butler (supra); Dowell v. City of Tulsa (supra); Beadey v. St. Louis County Water Co. (supra); Schuringa v. City of Chicago (30 Ill. 2d 504, cert. den. 379 U. S. 964). While denials of certiorari do not constitute decisions on the merits, it is clear that the Supreme Court has repeatedly held that no substantial Federal questions are presented by objections to fluoridation.
The question of the desirability of fluoridation is immaterial. In the face of the overwhelming precedents previously cited, and in accordance with general principles of stare decisis, this court sitting at Special Term, feels constrained to deny plaintiffs’ application for a temporary injunction and to grant defendants’ motion for a dismissal of the complaint. Until the scientific evidence as to the deleterious effects of fluoridation reaches beyond the purely speculative state now existing, decisional law mandates the holding that the controversy should remain within the realm of the legislative and executive branches of government. While the courts do not have a right to impose fluoridation upon anyone, judicial restraint requires us to adhere to the uniform decisions holding that the executive and legislative branches of government do — at least until some proof is adduced that fluoridation has harmful side effects and therefore is not in the interests of the community. In so holding, the court is aware that no truly applicable analogy exists in other areas of judicially approved government-mandated action. In other cases, where the citizenry is mandated to do something primarily for the benefit of the individual citizen and with at most an indirect effect on society generally, alternatives are usually provided for those members of the public who do not wish to submit themselves to such requirements. For example, the case of compulsory education with the alternative of sending a child to private school comes to mind. This court is also aware that if such harmful effects become evident in the future, almost by definition, damage will have already befallen those forced to partake of fluoridated water by the action herein upheld. However, courts are traditionally, and with good cause, reluctant to act until the harm threatened becomes real, evident, and Imminent.
For the reasons above noted, the plaintiffs’ motion for temporary injunction is denied, and defendants’ cross motion to dismiss the complaint is granted.

 It appears that the allegation of infringement of religious liberty has been determined adversely in other courts and that those determinations, in effect, were affirmed by the United States Supreme Court in its dismissal of the appeal in Kraus v. City of Cleveland (351 U. S. $15, reported below, 163 Ohio St. 559); see, also, Dowell v. City of Tulsa (273 P. 2d 859 [Okla.], cert. den. 348 U. S. 912); DeAryan v. Butler (119 Cal. Ap.p, 2d 674, cert. den. 347 U. S. 1012) ; Baer v. City of Bend (206 Ore. 221); Froncek v. City of Milwaukee (269 Wis. 276).